# REPORTS OF CASES

# THE SUPREME COURT,

## JULY TERM, 1869.

ELLEN EUSTACE, RESPONDENT, v. CARL JAHNS, Administrator of the Estate of HERMAN SCHROEDER, Deceased, APPELLANT.

REPAIRS TO STREETS OR HIGHWAYS.—The owner of land, bordering upon public streets or highways, is not bound to keep them in repair.

REPAIRS TO STREETS AND OTHER PUBLIC THOROUGHFARES IN SAN FRANCISCO.— The law does not impose upon the owner of a lot fronting upon a public street in San Francisco, the duty of repairing defects in the portions of the street upon which his lot abuts.

STREETS AND OTHER THOROUGHFARES IN SAN FRANCISCO.—The legislative charter of the City and County of San Francisco confers the entire control, supervision and management of all the public streets, thoroughfares, etc., within its corporate limits, upon the Board of Supervisors and Superintendent of Public Streets and Highways.

CONSOLIDATION ACT—CONSTRUCTION OF THE 24TH SECTION AS AMENDED IN 1863.— The design, and only effect of this section, is, to exempt the city and county from the liability for injuries which would otherwise attach to it, by reason of the exclusive control of the streets and public highways, conferred upon it by other sections of the statute, and to transfer such responsibility to individual officers, agents and employés of the corporation.

STATUTE OF APRIL 26, 1862.—The application of the Act "requiring compensation for causing death by wrongful act, neglect or default," is not to be extended to any matters not embraced in the strict letter of the statute.

ACTION AGAINST ADMINISTRATOR.—No action can be maintained against an administrator, as such, that is founded upon malfeasance or misfeasance, or for a tort.

IDEM.—No action can be maintained to charge the estate of a deceased person upon a money demand, unless the claim has been previously presented to the administrator for his allowance.

APPEAL from the District Court of the Twelfth District, City and County of San Francisco.

The defendant appealed.

The case is stated in the opinion.

*Jas. B. Townsend,* for Appellant, submitted the following points and authorities :

*First*—That, by the common law of England, the repair of public highways is, *prima facie,* and of common right, *imposed* as a *duty* equally upon all the inhabitants of the *parish* in which they are situated. (1 Black. Com. p.* 357 ; Angell on Highways, Sec. 252.)

*Second*—That, there being generally in the United States no civil territorial divisions known as *parishes,* this common law obligation has been in most, if not all of said States, held not to exist; but a like duty and obligation has generally been imposed by *statute* upon the several *towns* into which such States are divided. (Angell on Highways, Secs. 258, 359, 360 ; *Palmer* v. *Andover,* 2 Cush. 600 ; *Providence* v. *Clapp,* 17 How. U. S. 161 ; *Morey* v. *Newfane,* 8 Barb. 648–650.)

*Third*—That there is, therefore, no *duty* imposed upon any individual to repair public highways, in the State of California, by virtue of its adoption of the *common law;* but such duty can only exist by virtue of some express *statute* imposing it.

A *duty* in regard to such repairs has generally been imposed, in this State, upon *road districts,* into which each county is required to be divided by its Board of Supervisors, and likewise upon the *overseers* of such districts, who are expressly required "to *cause* all the public highways within their respective districts to be *kept* clear from obstructions, and *in good repair,*" etc. (2 Hitt. Dig. p. 957, Arts. 6507, 6509, 6511.)

The duty and liability of *individual inhabitants* of such road districts, if any, beyond the payment of their respective

"road and property taxes," is one which is *common* to them *all*, and not *particular* to any individual by reason of the locality of his land with reference to such highway.

*Fourth*—That the repair of the public highways within the City and County of San Francisco, and the duty and liability of the *individual inhabitants* of said city and county in reference thereto (in like manner as in the balance of said State), depend entirely upon the *statutes* of said State, and lawful *ordinances* of said city and county relating thereto.

*Fifth*—That, as under the general law of said State concerning roads and highways, it is made the duty of the *road overseer* "to cause all public highways within his district to be kept in good repair," so, under the *special* statutes applying to the City and County of San Francisco it is made the duty of said *Superintendent of Public Streets and Highways* therein, to "*keep himself informed* of the *condition* of all public streets and highways," and "to *see* that the laws, orders and regulations relating thereto are *carried into execution*," etc., and, to secure his *performance* of this duty, he receives a liberal salary, gives bonds to said city and county, is allowed three deputies, and is prohibited from following, during his continuance in office, any *other* profession or calling, but required to devote himself *exclusively* to the duties of his office. (San Francisco Street Law, Secs. 22, 23 ; Cal. Stats. 1856, p. 162, Sec. 63 ; Cal. Stats. 1862, p. 402, Sec. 23—last clause.)

*Sixth*—That by virtue of the "Consolidation Act,' and other statutes relative to said city and county, the Board of Supervisors thereof are vested with the sole and exclusive *power* and *authority* "to provide for opening, altering, extending, constructing, *repairing*, or otherwise *improving* the public streets and highways of said city and county, and for the prevention and summary *removal* of all *nuisances*," etc., therein; and that said Board have, in pursuance of such power and authority, by the "General Orders" before referred to, and given in evidence upon this trial, prohibited any person or persons from breaking up, digging up, or in any manner *disturbing* any street within said city and county, "for *any purpose whatever*," without having first obtained

permission, in writing, from the Superintendent of Public Streets and Highways, and likewise declared it to be "the *duty* of any person or persons who may have made, or caused to be made, any *excavation* for *any purpose whatever*, in any public street," etc., not only to *protect* the public from injury therefrom by a railing or barrier, and lighted lantern, so long as such excavation shall necessarily continue, but also "immediately after the work shall have been completed, for which such excavation shall have been made, to *repair such street*," etc., so that it "shall be *in as good condition as it was before said excavation was made*." (San Francisco Consol. Act, Art. V, Sec. 74; Cal. Stats. 1859, p. 145, Sec. 10—amending Sec. 53; San Francisco Street Law, Secs. 3, 25, subd. 2d; General Order No. 553, Secs. 16, 17; Trans. pp. 31, 32; General Order No. 697, Secs. 15, 16; Trans. p. 30.)

That the term "streets" includes the *sidewalks* as well as the carriage-ways. (Angell on Highways, Sec. 263.)

*Seventh*—That, *independent* of the above mentioned, or of any other express statute of California, or ordinances of said city and county, a *general* legal *duty* undoubtedly rests upon all persons who *put* a street *out of order*, and thereby create a *nuisance* therein, to *restore* it to at least as good a condition as that in which it was found; and a corresponding legal *liability* would, doubtless, even at common law, rest upon any individual neglecting such duty, for the *damages* which might accrue from such neglect. (Angell on Highways, Secs. 222, 223, 224, 225.)

*Eighth*—That under the law regulating the liabilities of municipal corporations, as interpreted and construed in England, and in most of the United States, such bodies have been held *pecuniarily responsible* to individuals for damage sustained by them through the neglect of such corporations to perform, or their improperly or carelessly performing the *duties* incumbent upon them, and likewise for the acts, negligence, carelessness and misfeasance of their *contractors, agents* and *servants* whilst in their employ. (Angell on Highways, Secs. 221, 260, 261, 262, 263, 264, 267; *Mayor of N. Y.* v. *Furge*, 3 Hill, N. Y. 612; *Mayor of*

*N. Y,* v. *Bailey,* 2 Denio, N. Y. 433 ; *Rochester Wh. L. Co,*
v. *City of Rochester,* 3 Coms. 463 ; *Loyd* v. *Mayor of N. Y.,*
1 Seld. 369 ; *Martin* v. *Mayor of Brooklyn,* 1 Hill, N. Y. 545 ;
*Johnson* v. *Whitfield,* 6 Shep. Me. 286 ; *Cobb* v. *Standish,* 2
Shep. Me. 198 ; *Hunt* v. *Pownal,* 9 Vt. 411 ; *Kilsey* v. *Greene,*
15 Vt. 708 ; *Raymond* v. *Lowell,* 6 Cush. 524 ; *Drake* v. *City
of Lowell,* 13 Met. 292 ; *Brady* v. *Same,* 3 Cush. 121 ;
*Providence* v. *Clapp,* 17 How. U. S. 161.)

*Ninth*—That the 24th Section of the Street Law was not
intended to have, nor has it, the effect to create or impose
upon either property owners, or any other inhabitant of said
city and county, any *new* duty to repair the public streets
and highways, or to repair any *particular* streets or high-
ways of said city and county, nor to create any *new* liability
for injuries happening to persons or property in said public
streets and highways ; but its manifest object was—

1st—To exempt said City and County of San Fran-
cisco from the usually existing legal liability of such *muni-
cipal corporations* for the condition of its public streets, and
for any neglect of its officers to perform, or from their care-
lessly or improperly performing the duties incumbent on
them, and to exempt it from all liability for the acts, negli-
gence, carelessness and misfeasance of its contractors, agents
and servants.

2d—To declare and fix the liability of all such incor-
porated and other *companies* required by law to keep the
whole or any portion of such street in repair, or digging up
or disturbing the same, and the liability of street contract-
ors, and of all other persons who may, "for any purpose
whatever," have *made,* or *caused* to be made, any excavation
or dangerous place in any public street or highway, to pay
the damages which any private individual, not guilty of
carelessness, may, in person or in property, and under cir-
cumstances specified in said section, sustain by reason of
the wrongful act or neglect of such companies, contractors
or private persons.

3d—To make the remedy *joint* (as well as several) against
the companies, contractors or persons last mentioned, and
the *Street Superintendent,* or other *officer,* "through whose

*official neglect* such defect remained *unrepaired,* or such exca-
vation or embankment remained *ungraded.*"

*Tenth*—That if, contrary to the evidence, it could be sup-
posed that said injury had happened in consequence of
defects in said sidewalk, produced by the *natural decay
thereof* during the lifetime of said defendant's testator, and
(as we submit, contrary to law), it could be supposed that
said testator was *personally,* and the lot in question *specifi-
cally,* liable for all damages which might be sustained by any
person in consequence of the condition of said sidewalk,
then we say that no such damages could, *by action,* be recov-
ered against said estate, until a *claim* therefor, duly verified,
had been first presented to and rejected by said administra-
tor.    (Probate Act, Secs. 136, 144; *Ellissen* v. *Halleck,* 6
Cal. 386 ; *Quivey* v. *Hall,* 19 Cal. 100.)

*Eleventh*—That if, to escape the last mentioned conclu-
sion, it could, without evidence, be supposed that said side-
walk had become out of repair by the natural or other decay
or destruction thereof, *during the defendant's administration* of
said estate, and that said defendant was responsible there-
for, and *personally* bound to repair said sidewalk, then said
verdict and judgment are clearly erroneous and *against law,*
because said action and judgment should have been against
said defendant *personally,* and not against him as *adminis-
trator of said estate.*    The complaint alleges that said acci-
dent happened by reason of "said wrong and negligence of
*said defendant,*" which clearly would not warrant a judg-
ment *charging said estate.    (Crayton* v. *Munger,* 9 Texas, 292 ;
*Able* v. *Chandler,* 12 Texas, 92.)


*McRae & Rhodes,* for Respondent.

The 24th Section of the Consolidation Act certainly indi-
cates the persons liable for defective streets or sidewalks,
and declares such persons to be those "upon whom the law
may impose the duty to repair the defects," etc.    (*Vide*
Consol. Act, p. 115 ; Stats. Cal. 1863, p. 532.)

Section 17 of the same amended Act declares that, "The
person owning the fee, or *the person in possession* of land, lots,

or portions of lots, or buildings under claim, *or exercising acts of ownership over the same,* shall be regarded, treated and deemed to be the *owner,* (for the purpose of this law), according to the intent and meaning of that word, as used in this Act," etc.

Now, the administrator of an estate is tae person upon whom the law throws the burden or duty of keeping the streets or sidewalks in repair, and, in contemplation of law, is in possession, exercising acts of ownership over the same.

Upon the death of the owner, the entire estate passes, by law, into the possession of the administrator, and never leaves his hand until settlement of all outstanding liabilities and indebtedness.

Now, whether the Consolidation Act on this subject be constitutional or not, depends upon adjudicated cases; and the case of *Hart* v. *Gaven,* 12 Cal. 476, settles the point in our favor.

This case also decides that the Act of the Legislature, throwing the burden of keeping streets and sidewalks in repair upon the adjacent owner is constitutional and just. The Court say: ''Some provision being necessary for repairing the streets, the mode by which this is done, if it be uniform and equal in its operation, must be left to legislative discretion. This duty of repairing the streets is in the nature of a public burden or tax, and we do not see that the rule adopted, applying to all the streets of a municipality, is not as near an approximation to uniformity as could well be attained." (*Ibid,* p. 478.)

In the case of *Robinson* v. *Roche,* 5 Cal. 460, this Court held that the lot owner is bound to keep the sidewalk in repair, and even went so far as to cast this burden upon him, where the accident occurred to a drunken man, and was partially traceable to his own negligence.

There would, therefore, seem to be no difficulty in settling the rule of liability; the trouble arises solely from its application to particular cases.

The appellant has filed a long and elaborate brief to prove that no liability at all exists, unless certain steps have been taken by the public, or the city authorities, or the party

injured, to fix it upon the offender. But these sections of the Act are only intended for the purpose of police regulation, and have no reference to such cases as that at bar.

The legal liability to keep a street in repair does not depend at all upon *notice* from the Superintendent of Streets and Highways; it arises from the possession or ownership of the property.

No person in a civilized state can hold, or even can possess real, or, indeed, any kind of property, in *absolute ownership*. Especially is this true in municipalities or cities, and as applied to real estate. The public good transcends every private right. Town lots are always more valuable than any other species of possessions, but town lots, when enjoyed by private owners, at the same time are liable to extraordinary public burdens. They can be assessed for public improvements; streets can be cut through them; fire ordinances prohibit the erection of combustible dwellings upon them, and, as in the present case, their owners are liable for injury to the wayfarer, whose business or pleasure lead him to pass along, over, or in front of them. They must respond in damages for accidents arising equally from neglect or misfeasance; or if none occur, then, by "notice" from the officer in charge of streets, such owners must abate the nuisance, fill up the excavation, repair the defect, or the public is authorized to do it for the owner, and he can be sued in *assumpsit* for the cost.

This view answers a capital error in the reasoning of the appellant.

Another error of the appellant arises from the endeavor to draw a distinction, where in law and reason none exists.

He seems to labor under the impression that it is necessary for the owner of the property fronting upon a street to do some positive or affirmative act, whereby the defect was occasioned, or to "put the street or sidewalk out of repair," before any legal liability attaches.

It is contended by him that a mere *nonfeasance* produces no responsibility, although a *misfeasance* possibly might.

In reason, as in law, there is no such distinction. The injury to the person damaged is the same; and the duty to

keep in repair is the same as the duty not to put out of repair.

This principle is fully decided in 2 Hill on Torts, p. 454, 455, note 2, and cases therein cited. (See the original common law on this subject, laid down in Buller, N. P., p. 25, Chap. V.)

The very point came up in *Burgess* v. *Gray*, 1 Com. R. 578, referred to in 2 Hill on Torts, p. 448, Sec. 13, and the owner was held liable. (*Burgess* v. *Gray* is also cited in 1 Man. Gran. & Scott, p. 578.)

But the case in which there is the fullest exposition of the points involved in the present is to be found in 15 Conn., entitled *Lindley* v. *Bushnell*, (p. 225.)

The same point was raised there that is insisted upon here: that it was not by any agency of defendant that the injury resulted. But the Court say, in reply to this suggestion: "Nor would it make any difference in the result, although the trespasser by whom the property was unlawfully placed upon the travelled road could be discovered, and although the plaintiff could sustain an action against him. The defendant's duties and obligations could not be varied, nor his responsibility discharged by this circumstance. An action will lie against him who continues a nuisance, as against him who erected it."

The entire case is recommended to the Court as one *quatuor pedibus* with the one at bar, and the reasoning of the presiding Judge is especially full and forcible.

*J. B. Townsend*, in reply, insisted that the authorities cited by respondent have no application to the case at bar.

SPRAGUE, J., delivered the opinion of the Court:

This is an action against Carl Jahns, as administrator of the estate of Herman Schroeder, deceased, to recover damages for personal injuries, alleged to have been sustained by plaintiff, in consequence of the neglect of the defendant to keep in proper repair a portion of a public street in the City and County of San Francisco, upon which fronted a lot

of ground belonging to his testator, and of which, as such administrator, he was in possession by his tenants. The prayer of the complaint is "for judgment against Carl Jahns, administrator as aforesaid, for the sum of $7,500, for costs of suit, and that said judgment may be a charge against the estate of said Herman Schroeder, deceased, to be paid out of the assets of said estate, and also a personal debt, liability and charge against said defendant."

The defendant demurred to the complaint, upon the ground that the same did not state facts sufficient to constitute a cause of action against the defendant, neither as administrator of said estate nor personally.

"*First*—Because the law does not impose upon this defendant, either personally or as such administrator, by reason of his testator's ownership of the lot of ground described in the complaint, and his possession thereof, as such administrator, the duty to repair and keep in order the public street or highway in front of said real estate.

"*Second*—Because said complaint does not show that this defendant had, prior to said plaintiff's meeting with the injury mentioned in said complaint, been required by the Superintendent of Public Streets and Highways of said city and county, by notice, in writing or otherwise, to improve or repair said street or sidewalk in any manner or respect whatever.

"*Third*—Because said complaint does not show that either this defendant, or his said testator, *caused* the defects in said street or sidewalk in said complaint mentioned, nor that either of them put said street or sidewalk out of repair, or did any act causing or tending to cause the injury of said plaintiff set forth in said complaint;" and, at the same time answered, substantially admitting his representative character, as alleged in the complaint, and his possession of the lot described therein, at the time of the alleged injuries, but alleged "that he was not, at the time of the alleged grievances, in said complaint mentioned, the person upon whom the law imposed the duty to repair or keep in order the public street or highway in front of the real estate in said complaint described; nor did the law, prior to and at said

time, impose upon or require of him that duty;   *   *   *
nor had he, at said time, notice that said street, in front of
or adjoining said premises, was, or had become, out of
repair, or that the defects thereon, mentioned in said com-
plaint, existed;"   *   *   *   and further, upon information
and belief, averred "that immediately prior to the time of
the alleged injury to said plaintiff complained of, one ——
Miles and John O'Brien, street contractors, had contracted
with the City and County of San Francisco to put up a sewer
into said Minna street, from Third to Fourth streets, and
that prior to and at the commencement of their execution of
said contract, said sidewalk had not the defects nor want of
repair, in said complaint mentioned, and therein alleged
to have caused injury to said plaintiff; but that in the exe-
cution of their said contract, they, said Miles and O'Brien,
without the consent, permission, authority or knowledge of
defendant, had thrown large quantities of earth upon said
sidewalk, and thereby broke and injured the same, and
loosened the planks thereof and produced the defects therein,
in said complaint mentioned, and therein alleged to have
caused said injury to said plaintiff, and that said injury and
damage to said plaintiff, if any such there was, was caused
by the defects in said sidewalk and the injuries thereto,
produced by the said contractors, Miles and O'Brien, as
aforesaid, and was not caused by any act, default, negligence
or wrong of the defendant or his testator."

The demurrer was overruled, and the case was tried before
a jury which returned a verdict for plaintiff in the sum of
$4,000, whereupon the Court rendered a judgment against
the defendant, as administrator, for $4,000, and directed the
sum to be paid by the administrator out of the estate of
Herman Schroeder, deceased, in due course of administra-
tion of said estate, and further, that said Carl Jahns, indi-
vidually, pay the costs of suit.

The defendant moved for a new trial, upon a statement
setting forth the evidence in full given on the trial, upon
the grounds:

*First*—Insufficiency of the evidence to justify the verdict
in several particulars stated, the sixth of which was, "that

no evidence whatever was given, showing or tending to show that any claim against the estate of said Herman Schroeder, deceased, for damages sustained by said plaintiff from the injury set forth in said complaint had, prior to the bringing of this action, been presented to defendant as administrator of said estate for allowance against the same."

*Second*—That the verdict is against law, inasmuch as, under the circumstances shown by the evidence, the law did not impose upon the defendant as a duty to repair the defect in the sidewalk from which said plaintiff received injury, nor render him personally, nor the estate of which he is the administrator, liable to said plaintiff for damage which she may have sustained by reason of such injury.

*Third*—Errors of law, which occurred at the trial and duly excepted to by defendant—first, in denying defendant's motion for non-suit, etc.

Which motion for a new trial was overruled; and this appeal is from the judgment, and the order denying defendant's motion for a new trial.

The points presented and discussed on this appeal are substantially as follows:

*First*—Does the law impose upon an owner of a lot fronting upon a public street in the City and County of San Francisco the duty to repair a defect in such portion of that public street upon which his lot abuts or fronts?

*Second*—Assuming the above question answered in the affirmative, on failure to perform that duty by an administrator, who, as such, is in possession of a lot abutting upon a public street, do the damages resulting to an individual in consequence of such neglect of an administrator constitute a legal claim against the estate of his testator?

*Third*—Assuming affirmative answers to both the foregoing questions, can a suit be maintained for the establishment of such claim for damages against the estate of a deceased person without a previous presentation thereof to the administrator, properly authenticated for allowance by him, and his rejection or disallowance of the same?

In considering the first proposition, as no such duty is imposed by the common law, if it exists at all, its warrant

must be found in the statutes of our State. Our attention has not been directed to, nor are we aware of the existence of any general statute of this State imposing such a duty upon a private citizen, or the owner or occupant of lands bordering upon public streets or highways.

But we are referred to a special statute applicable to the City and County of San Francisco, approved April 1, 1856, entitled "An Act to repeal the several charters of the City and County of San Francisco, and to consolidate the government thereof," and to several subsequent Acts amendatory of the above Act, as furnishing clear and explicit exaction of this duty at the hands of individual owners of lots fronting upon the public streets and thoroughfares of said city and county.

Upon a careful examination of these several Acts, and such portions thereof particularly as were in force in May, 1866, we find that by those Acts the entire supervision, control and management of the public streets, highways, lanes, alleys, places or courts within the corporate limits of the City and County of San Francisco was and still continues vested in the Board of Supervisors and Superintendent of Public Streets and Highways of said city and county, and we find no authority delegated to, or duty imposed upon, the individual owner of lands or lots in said city to improve or repair any portion of such streets, lanes, alleys, highways, places or courts, or in any manner interfere or meddle with the same, in the way of improvement or repair thereof, of his own volition, or upon his individual responsibility. The only duty imposed upon the individual owner of such lot or lands in said city is the payment of such assessments as shall be lawfully made upon his lots or lands by the Superintendent of Public Streets and Highways, to defray the expenses of opening, constructing, improving or repairing the streets, highways, etc., after the same shall have been opened, constructed, improved or repaired by order of the Board of Supervisors, under the direction, control and supervision, and to the satisfaction of the Superintendent of Public Streets and Highways, except in the case of special local repairs required by written notice from the Superintendent of

Public Streets, to be made or commenced by the owner, tenant or occupant of a lot within three days after the service of such notice, specifying what improvement is required, as provided in Sections 14, 15, and 16 of an Act approved April 25, 1862, amendatory of and supplementary to the Act of 1856 heretofore referred to (Stats. 1862, pp. 399, 400); and this, it will be observed by reference to the sections named, is not a primary duty imposed by the statute, but is left optional with the Superintendent of Public Streets and Highways to impose the duty or not, in his discretion, and does not attach or become an existent obligation or duty until after the Superintendent has exercised his discretion in the premises by the service of the notice in writing, as required by Section 14; and, in the present case, it is not claimed or pretended by plaintiff that any such notice was ever served upon the defendant or his tenants in the possession of the lot of his testator. And for special local repairs or improvements contemplated by the fourteenth section of the above Act of 1862, and by the tenth subdivision of Section 8 of the same Act, as amended April 25, 1863 (Statutes 1863, p. 528), the lots fronting upon the street on the side and at the point where such improvements or repairs are required or made, are not even liable to assessment to defray the expenses of such improvements or repairs, without a notice, as required by Section 14, has been previously served upon the owner or occupant of the lot, as is manifest by subdivision two of the same Section 8 (Statutes 1863, p. 527), when read in connection with subdivision ten, same section, and Sections 14 and 15, above referred to, and Sections 21 and 22, same Act, as amended in 1863 (Statutes 1863, p. 531–2), and Section 23, and subdivision two of Section 25, same Act (Statutes 1862, p. 402–3). By the said Sections 22 and 23, it is made the duty of the Superintendent of Public Streets and Highways to devote his entire time and undivided attention to the supervision and care of the public streets and highways, public buildings, parks, etc., of said city and county; and for that purpose the Board of Supervisors is authorized to allow him deputies, not exceeding six in number; and for the faithful performance of his duties he is required to give

bonds to the city and county in such sum as may be fixed by the Board of Supervisors. And, under said Section 14, subdivision two and ten of said Section 8, and said Section 21, the Superintendent of Streets is manifestly authorized to contract for simple repairs of street improvements already constructed and accepted by the proper authority, and cause the same to be made, without reference to the adjoining property, and the expenses of such repairs would be properly chargeable to the street department fund of the city and county.

In determining the question now under consideration, it is not necessary for the Court to undertake to determine upon whom the plaintiff can legally call to respond in damages to her for the injuries she has sustained by reason of the defective street. It is only necessary for us to determine whether the individual owning, or having control or possession of a lot immediately adjoining such defect in the street, is responsible in damages to her, by virtue of legislative enactment. As the defendant's responsibility in this action, if any exists, rests solely upon allegations of nonfeasance, or neglect of a duty, devolved from the fact of his possession and control of the lot fronting on the side of the street where the defect occasioning the injury existed, and not upon any pretense or allegation of any affirmative action, misfeasance or malfeasance, it follows that unless there exists some positive legislative enactment imposing such duty, the responsibility cannot attach.

From a most careful consideration of all the statutes relating to the public streets and highways of the City and County of San Francisco, we find no personal duty primarily or inceptively cast upon the individual owners of lots or lands therein, in respect to the care, management, control, improvement or repair of the public streets and highways; neither has our attention been called to, nor are we aware of any ordinance of the Board of Supervisors of said city and county imposing such duty. But we do find that the legislative charter of the City and County of San Francisco has conferred the entire control, supervision and management of all the public streets, highways, lanes, alleys, places or courts

within the corporate limits of said city and county, upon the Board of Supervisors and Superintendent of Public Streets and Highways, and prescribed a mode of procedure by which such officers may open, improve, repair and protect the public streets, highways, lanes, alleys and courts within the city and county, and impose burdens and taxes upon the real estate thereon, to defray the expenses of opening, improving and repairing the same. And we further find that by Section 24 of the Act of 1862, hereinbefore referred to, amended in 1863 (Statutes 1863, p. 532), the city and county, as a corporation, are relieved from any liability "for damage to person or property, suffered or sustained by, or by reason of the defective condition of any street or public highway of said city and county, whether originally existing, or occasioned by construction, excavation, embankment, or want of repair of such street or public highway, and whether such damage be occasioned by accident on said street or public highway, or by falling from or upon the same;" and further, that "if any person, while carefully using any street or public highway of said city and county, graded, or in course of being graded, or carefully using any other street or public highway leading into or crossing the same, be injured, killed, lost or destroyed, or any horses, animals, or other property be lost, injured, or destroyed through any defect in said street or public highway, graded, or in course of being graded, as aforesaid, or by reason of any excavation or embankment in or of the same, or by falling from or upon such embankment or excavation, then the person or persons upon whom the law may impose the duty either to repair such defect, or to guard the public from the excavation, embankment or grading aforesaid, and also the officer or officers through whose official neglect such defect remained unrepaired, or said excavation or embankment remained unguarded, as aforesaid, shall be jointly and severally liable to the person or persons injured, for the damages sustained." This is the section containing the law which seems to be especially relied upon by respondent as fixing the liability of defendant in this case. But we cannot discover that, with respect to private citizens or individuals, it creates any

new liability or imposes any duty. The manifest design and only effect of the section is to exempt the city and county, in its corporate capacity, from the liability which, at common law, would otherwise attach, by reason of the absolute and exclusive control of the streets and public highways delegated to the corporation by other provisions of its charter, and transfer such responsibility to individual officers, agents and employés of the corporation, whose personal neglect or malfeasance may have occasioned the injury. These streets and public highways are public property, opened, constructed, controlled, improved and repaired, for public use and benefit, by the city and county government, and no private individual possesses any exclusive right to occupy, use or control any portion thereof, by reason of his ownership or occupancy of adjacent lots and premises, by virtue of any statute of the State, and we are unable to comprehend by what process of ratiocination the duty to repair a public street or highway is devolved upon an individual from the fact that he is liable to be notified by the Superintendent of Streets to make specific repairs, or owns or occupies a lot liable to be assessed to defray the expenses of repairs, when made by another at the instance of the Superintendent.

A private citizen, lot owner in the City and County of San Francisco, has no claim to use, occupy or control any portion of the public streets of said city and county, superior to a casual sojourner therein from a remote portion of the State, unless by virtue of some ordinance of the Board of Supervisors, and none such has been referred to or alleged to exist.

We are aware of the existence of the general statute of April 26, 1862, entitled "An Act requiring compensation for causing death by wrongful act, neglect or default" (Stats. 1862, p. 447), but we do not regard this statute as affecting, in the slightest degree, the question now under consideration, and we are not disposed to extend by construction a statutory provision penal in character, so manifestly harsh and of doubtful validity, so as to include any subject-matter not strictly within its letter. By what process of reasoning is a party deemed guilty of neglect or default from a simple

failure to perform an act which he never undertook to perform, and the performance of which, as an existing duty, was never imposed upon him by any law or moral obligation? An existing duty or obligation is an essential and necessary prerequisite or predicate of an affirmation of neglect or failure to perform. The distinction between the liability of a party *to be called* to the performance of an act, or to have his property assessed to defray the expenses of its performance by another, and a present, absolute duty to perform of his own volition, is too obvious and prominent to require comment.

The second section of this Act reads as follows : " Whenever the death of any person shall be caused by an injury received in falling through, or by drowning after having fallen through, any opening or defective place in any sidewalk, street, alley or wharf, in any city or incorporated town, the death of such person shall be deemed to have been caused by the wrongful neglect and default of the person or persons, corporation or company, firm or association, whose duty it was at the time such person received such injury, to have kept in repair such sidewalk, street, alley or wharf, *or who was or were at that time liable to have been ordered or notified to make, or to have been assessed for the expenses of making the repairs on such sidewalk, street, alley or wharf where the injury to such person occurred.*"

The last clause of this section, which we have italicised, it will be observed—so far as the City and County of San Francisco are concerned—undertakes to impose a penalty or liabilty, as for a wrongful neglect to perform an act, before any obligation or duty to perform is existent or attaches to the party; in other words, a party is sought to be made responsible for not having already performed, something, which contingently and prospectively may become his duty to perform, or to the expense of which he is liable to be called upon to contribute, without being invested with any power or control over, or discretion in relation to, the subject-matter of the act, its character, or mode of performance.

We are not disposed to extend the application of this very

novel and questionable mode of creating liabilities for con-
structing torts to any subject-matter not embraced in the
strict letter of the statute. And that the Legislature did
not intend this provision should extend beyond the imme-
diate subject-matter of the Act in which it is found, is
apparent from the fact that this Act and the Act of April
25, 1862, commonly known as the San Francisco Street Law,
Section 24 of which, as amended in 1863, has already been
quoted, must have been under consideration at the same
time; and neither the original section, nor the same as
amended one year thereafter, contains this or any similar
provision; nor does any other statute of the State contain a
like or similar provision, so far as we are at present advised.

From these views it follows that the first proposition must
be determined in the negative, from which necessarily would
result the judgment that the facts stated in plaintiff's com-
plaint do not constitute a cause of action against the defend-
ant personally, or as administrator.

Assuming, however, that it was the duty of the defendant,
as administrator, to repair the defect in the street, and that
his neglect of that duty occasioned the injury to plaintiff
complained of, do the damages resulting therefrom consti-
tute a legal or valid claim against the estate of defendant's
testator?

The foundation of this action is the personal tort of the
defendant, and not of his testator. The defect in the street,
from which the injury resulted to plaintiff, is not alleged to
have existed anterior to the death of such testator; hence,
no obligation was incurred by the testator, in his lifetime, in
respect thereto, which could serve as a basis for a valid
claim against his estate, or a right of action against the
administrator of his estate. And it is a general rule of law
that no action will lie against an executor or administrator
to which his testator or intestate was not liable. (2 Williams
on Executors, p. 1478.)

The duty alleged to have devolved upon the defendant,
and which was cast upon him by virtue of his possession
and official or representative relation to the estate of his
testator, was strictly a personal duty and obligation, volun-

tarily assumed, and a personal injury resulting from a neglect of that duty by him, renders him personally liable for a tort; but we are not aware of any principle of law by which the estate he represents could be charged with the result of that negligence. It cannot be sustained upon the principle of *respondeat superior* or principal and agent, for the simple reason that no such relation exists between heirs, legatees or creditors of the estate and the administrator. The administrator is not in the employ or subject to the control of any superior, other than the Probate Court, in the performance of any duty imposed upon him, as such, by law. Nor can the estate be held responsible upon the ground of a nuisance erected, or permitted to exist, or continue upon the premises belonging to it, as the sidewalk in which the defect existed was not upon or appurtenant to lands the property of the estate, or erected and kept up for the benefit or use of any premises belonging thereto. Although, after notice in writing served upon the administrator to repair, the estate generally was liable in account with its administrator for the expenses of such repair, if made by the administrator, and if not made by him within the time required by law, the premises adjoining were liable to assessment to the extent of the contract price of making the repair, under the direction of the Street Superintendent, yet there is a marked and wide distinction between the liability of the estate for the expenses of repairs and its liability for the personal tort of its administrator, not selected by, or in any manner directed by or under the control of parties interested in the estate, in neglecting to perform a personal duty imposed upon him by law. The very nature of the action imports the culpable delinquency or misfeasance of a sentient being, and a personal liability in consequence thereof, a delinquency or misfeasance which cannot be affirmed of an estate ; and when such liability is established, and the extent thereof determined by the judgment of a competent Court, it is enforced against the individual perpetrator of the wrong.

The very language of the law relied upon by respondent in support of her demand, imports a personal liability for an

individual delinquency or wrong : "The person or persons upon whom the law may impose the duty, either to repair such defect, or to guard the public from the excavation, embankment or grading aforesaid, and also the officer or officers through whose official neglect such defect remained unrepaired, or such excavation or embankment remained unguarded, as aforesaid, shall be jointly and severally liable to the person or persons injured, for the damages sustained" (Section 24 Street Law for San Francisco, as amended in 1863 ; Stats. 1863, p. 532); "the person or persons upon whom the law may impose the duty to repair    *    *    * shall be jointly and severally liable to the person or persons injured."—the duty here designated, as the predicate of the liability incurred for its neglect, is a personal duty imposed by law, and the individual person or persons who neglect to perform that duty are made personally liable for injuries resulting from such neglect.

The estate represented by a person upon whom this duty is cast is no more liable for his neglect of a personal duty than it would be for a fine which might be imposed upon him by a criminal Court for an assault and battery committed by him while in possession of such estate. (*Crayton* v. *Munger*, 9 Texas, 292 ; *Able* v. *Chandler*, 12 Id. 92.)

No action can be sustained against an executor or administrator, as such, on a penal statute ; nor when the cause of action is founded upon any malfeasance or misfeasance is a tort, or arises *ex delictu*, such as trespass, false imprisonment, assault and battery, slander, deceit, diverting a watercourse, etc., when the complaint imputes a tort done to person or goods of another by the testator or intestate. (2 Williams on Executors, pp. 1470–1471 ; *Wheatley* v. *Lane*, 1 Sand. 216, note 1 ; *People* v. *Gibbs*, 9 Wend. 29.)

Moreover, upon the third proposition, we are clearly of opinion that, under the statutes of this State, no action can be maintained upon a simple money demand or claim against an estate, whether such demand or claim be based upon simple or special contract, or any other legitimate basis for a claim or demand payable out of the general assets, until the same has been duly presented to the administrator for allow-

ance, and by him disallowed or retained for more than ten days without endorsement of his action thereon. That the demand or claim is for unliquidated damages is no reason for making it an exception; the claimant could as conscientiously verify such claim or demand for presentation to the administrator as the complaint in a suit brought by her for the recovery of a judgment for the same demand.

From these views it follows that, even admitting the personal duty of the lot owner or occupant to repair a defect in a public street contiguous to such lot in the City and County of San Francisco, it being a personal duty, an action for a breach of such duty can only be maintained against the delinquent individually, and not in his representative capacity as administrator, so as to charge the estate he represents; and, further, that before any suit can be maintained in this State against an administrator, for the purpose of establishing a claim or simple money demand of any character whatever against the estate he represents, such claim or demand must have been presented to the administrator in proper form for his allowance, and by him rejected or disallowed.

The judgment of the Court below, therefore, considered with reference to the second and third propositions alone, should be reversed, and it is so ordered.

*Per* RHODES, J.: I concur in the judgment.

SANDERSON, J., expressed no opinion.