Argued October 14, decided November 9, 1909.

## FETTING *v.* WINCH.

[104 Pac. 722.]

EXECUTORS AND ADMINISTRATORS—TORTS—LIABILITY.

1. An action does not lie against an executor or administrator in his representative character for a wrongful act committed by him while administering the estate, whereby a personal injury is inflicted on another, but he must be sued as an individual, and a judgment against him personally must rest either on the principle of *respondeat superior* or on the breach of some duty amounting to actionable negligence, or on his independent tort.

MASTER AND SERVANT—"RESPONDEAT SUPERIOR."

2. The maxim of *"respondeat superior"* means that a master is responsible for the acts of his servants where the particular act causing the injury is within the scope, and is done in the exercise, of the servant's delegated authority. The test of the existence of the relation of master and servant is found in the exercise of authority in appointing the servant, in directing his acts, in receiving the benefits of his acts, and in reserving the power of dismissal.

EXECUTORS AND ADMINISTRATORS—FAILURE TO DISCHARGE DUTIES—
    LIABILITY.

3. An executor or administrator who neglects to discharge an obligation imposed by law, and thereby injures another, is personally liable therefor.

EXECUTORS AND ADMINISTRATORS—FAILURE TO DISCHARGE DUTIES—
    LIABILITY.

4. An executor or administrator is personally liable for the torts committed while administering the estate.

EXECUTORS AND ADMINISTRATORS—FAILURE TO DISCHARGE DUTIES—
    LIABILITY.

5. An executor in possession of a building for the estate employed a head janitor, who engaged two assistants. One of the assistants was killed, while the other assistant operated the elevator in the building. The head janitor, who was an experienced elevator operator, abandoned the work, and negligently placed one of his assistants in charge thereof. There was nothing to show that the executor derived or expected to receive any advantage from the employment of the head janitor or his assistants. There was no defect in the elevator or machinery connected therewith. *Held,* that the executor was not personally liable for the death of the assistant janitor.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is an action by Margaret Fetting, as administratrix of the estate of her husband, William F. Fetting, deceased, against Martin Winch, to recover damages resulting from the death of her spouse. The facts admitted by the pleadings or disclosed by the testimony are that Amanda Reed died testate, seised of real property of Third street, in the city of Portland, and also

was the owner of the structure thereon known as the "Abington Building." She designated as the executor of her last will, the defendant, who duly qualified as such, and took and retained the possession and control of such building. He leased the rooms in the upper stories thereof to persons for whose accommodation an elevator, propelled by electricty, was maintained. The power was applied by a person in the cage, who, by shifting a lever, caused to it to come in contact with one or the other wires of a loop which extended over pulleys at the top and bottom of the elevator shaft, thereby throwing the magnets in touch, raising one wire and lowering the other a short distance, and impelling the machinery in the desired direction. Winch undertook to keep the rooms in the upper stories cleanly, and for that purpose employed Neils Mathison as head janitor; the latter engaging as his assistants Fetting and William Reynolds. In addition to the work usually performed by the under janitors, each alternately operated the elevator about two hours in the evening, when the ringing of a bell in the cage announced that some person desired to go to, or depart from some of the apartments. All the janitors on June 30, 1907, were engaged in cleaning the elevator shaft, standing on the top of the cage, and performing the work as they descended. Mathison operated the machinery by moving the wire loop up or down with his hands, dropping the elevator gradually by stations as his assistants dusted and washed the walls. When the cage reached the second floor, Mathison got off, after having informed Reynolds how to change the wires so as to go down, to stop the machinery and to remain stationary. In a few minutes after Mathison left the elevator, Reynolds inquired of Fetting if his part of the work was finished so as to descend, and, having received an affirmative answer, Reynolds moved the wire loop, bringing the cage to the proper place, but, when he attempted to stop the machinery, the elevator suddenly

went to the top of the building, where it remained. He got off and discovered that Fetting was not on the cage, but found him at the bottom of the elevator shaft; and about two hours thereafter he died. Fetting had been engaged as a janitor at the Abington building about six months and Reynolds eighteen days prior to the accident. Reynolds had no knowledge of the management of an elevator except such as he had acquired when operating the cage with the lever on alternate nights. Until Mathison left the cage the help was ample for the work required of the janitors where Fetting was injured. The complaint alleged that Winch was in the exclusive possession of the Abington building, and invested Mathison, who "was a skillful and experienced elevator operator and could safely operate the elevator from the top," with authority to select, employ and discharge assistants, thereby making him the agent and personal representative of the defendant; that Mathison carelessly abandoned the elevator and negligently placed in charge thereof Reynolds, who had no experience in controlling the machinery, which fact was known to the head janitor, but was unknown to Fetting; and that be reason of Reynolds' incompetency safely to operate the elevator from the top, and his lack of knowledge and skill in managing the cage, he lost control thereof, causing Fetting to miss his balance and to be precipitated to the bottom of the shaft, whereby he was injured and in consequence of which he died, setting forth the facts in substance as hereinbefore detailed. No reference is made in the complaint to the appointment or qualifications of the defendant as executor, a recovery being demanded against him personally. The answer averred such relation, that Mrs. Reed died seised of the Abington building, and that on June 30, 1907, the defendant was in possession thereof "for the said estate"; which facts are admitted by the reply. The cause coming on for trial, the

plaintiff introduced her evidence and rested, whereupon a judgment of nonsuit was rendered, and she appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Enoch B. Dufur.*

For respondent there was a brief over the names of *Messrs. Hogue & Wilbur* and *Mr. John M. Gearin,* with oral arguments by *Mr. Ralph W. Wilbur* and *Mr. Gearin.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The question to be considered is whether or not a recovery can be had against an executor based on the evidence given at the trial. An action cannot be maintained against an executor or an administrator in his representative character while administering the estate, for a wrongful act committed by him, whereby a personal injury is inflicted upon another. If liable at all, as the act is beyond the scope of his official authority, he must be sued, as in the case at bar, as an individual. Schouler's Ex. & Adm'r, § 385; 11 Am. & Eng. Enc. Law, (2 ed.) 942; 18 Cyc. 883. A judgment against an executor personally for damages sustained on account of a personal injury must rest either on the principle of *respondeat superior* or on the breach of some duty amounting to actionable negligence; or on his independent tort.

2. "The maxim of *respondeat superior*," says Lord Chief Justice BEST in *Hall* v. *Smith,* 2 Bing, 156, 160, "is bottomed on this principle: That he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it." The editors of the National Reporter System, in their valuable work, Words and Phrases (volume 7, p. 6177), say: "The maxim of *respondeat superior* means that a master is responsible for the acts of its servants if the particular act causing the injury be within the scope of, and be done in the exercise of

the servant's delegated authority. The test of the exist-
ence of the relation of master and servant is found in
the exericse of authority in appointing the servant, in
directing his acts, in receiving the benefits of his acts,
and in reserving the power of dismissal"—citing in
support thereof the case of *Southern Ry. Co.* v. *Morrison,*
105 Ga. 543 (31 S. E. 564, 566).

3. In the case at bar the pleadings admit that on June
30, 1907, the defendant, as executor, managed the estate
of Amanda Reed under the authority of the county court
of Multnomah County, and was in possession of the
building "for the said estate." No testimony was offered
tending to show that Winch was managing the building
or leasing any of the rooms therein for his own benfit, or
that he derived or expected to receive any advantage,
profit, or emolument whatever from the employment of
the head janitor or of his assistants. In the absence of
such evidence, it cannot be legally said that the defendant
is individually liable for Mathison's act in leaving the
elevator and in appointing Reynolds to operate it.

When the law imposes a duty on an administrator
or an executor, and he neglects to discharge the obliga-
tion thus enjoined, whereby another sustains an injury,
the personal representative is liable therefor. Thus in
*Blevin's Ex'rs* v. *French,* 84 Va. 81, 84 (3 S. E. 891), a
hotel was devised to executors, who, as trustees were
directed by the will to keep the building in repair. Be-
tween the curbing on the premises and the entrance to
the hotel was a cellarway covered by an area light,
composed of glass and iron. French, who was an express-
man, was carrying a trunk from the sidewalk into the
hotel, when the area light gave way under him, and he
fell and was injured. To recover the damages sustained
he instituted an action, alleging that executors, being
possessed of the premises, negligently permitted the cel-
larway to become and remain deficiently covered, where-

by he was injured. He obtained a judgment, which was affirmed on appeal; the court saying: "It was the duty of the defendant to keep the area light in a safe and secure condition, and this duty, without any sufficient excuse, they failed to perform."

So, too, in *Boston Beef Packing Co.* v. *Stephens,* (C. C.) 12 Fed. 279, 280, the defendants, as executors and trustees under a will, leased a building to be used as a storage warehouse, which structure at the time of the demise was unfit and unsafe for that purpose, and which, in consequence of such use of the tenants, fell, injuring the plaintiff's adjoining building, and it was determined that the defendants were personally amenable, the court saying: "They were held liable only to the extent that for their own profit they authorized and sanctioned the acts of the tenants in the use and control of their property." Farther in the opinion it is observed: "Whoever for his own advantage authorizes his property to be used by another in such manner as to endanger and injure unnecessarily, the property or rights of others, is answerable for the consequences." In *Donohue* v. *Kendall,* 50 N. Y. Super. Ct. 386, 390, the defendants, who were executors, leased to the plaintiff some rooms in the upper part of the house with the right to use a part of the cellar. Access to such basement was had by a stairway from which one step was gone. In descending such stairway the plaintiff fell and was injured because of the absence of the step. She commenced an action to recover the damages sustained, and, having secured a judgment personally against the defendant, it was affirmed. In an agreeing opinion, Judge TRUAX says: "The statute * * placed upon defendants the duty of keeping the stairs in good repair. This duty they failed to perform. For this reason I concur." It would seem that the decision last noted was affirmed without an opinion  (*Donohue* v. *Kendall,* 98 N. Y. 635), though

there is a discrepancy as to the time when the former judgment purports to have been given.

4. There was no patent or latent defect in the elevator, the machinery, or in anything connected therewith in the Abington building that the defendant failed to inspect or to keep in proper repair; and hence he cannot be charged with a breach of duty which the law enjoined, in consequence of which the injury resulted. An executor or an administrator, while administering a decedent's estate, is personally liable for the torts which he may commit whereby another sustains damages. Thus in *Newsum* v. *Newsum,* 1 Leigh. (Va.) 86 (19 Am. Dec. 739), an administrator sold a slave, the property of others, as a part of an intestate's estate, and applied the proceeds in payment of the debts of the estate without notice of the rights of the true owners, and it was held that he was personally liable in trover by such owners. In *Plimpton* v. *Richards,* 59 Me. 115, an action was instituted against the defendants "as executors," to recover damages caused by raising a dam whereby the water of a stream overflowed the plaintiff's land, and it was ruled that the action would not lie; thereby impliedly holding that an executor was personally liable for a tort which he had committed. In *Mason* v. *Rhinelander,* 8. Ben. 163 (Fed. Cas. N. 9,251), an executor leased land belonging to an estate which abutted on navigable water, reserving to himself the right to build a bulkhead on the premises. He subsequently constructed the bulkhead in such a manner that a timber projected under the surface of the water out of sight. A canal boat lying at the bulkhead, when the tide fell, was so injured by the protruding log that it sank, and it was held that the executor was personally liable for the damages caused by the faulty construction of the bulkhead. The torts referred to in the three cases last noted evidently resulted from the active participation of an executor or an administrator, thereby

rendering him personally liable for the damages which followed from his willful or negligent act.

5. In *Deschler* v. *Franklin,* 20 Ohio Cir. Ct. R. 56, 57, it was ruled that where a person was injured by the negligence of the operator while riding in a passenger elevator in an office building, the property of an estate managed and controlled by an executor, such injured person cannot recover damages for such injury in an action against the executor in his representative capacity. In this case the plaintiff was injured by the negligence of a servant, who was employed by the executor to operate the·elevator. In deciding that case, the court, in referring to the defendant, said: "If any cause of action arises through his negligence ·in managing the estate, it must be against him personally, and not against him in his representative capacity." In *McCue* v. *Finck,* 20 Misc. Rep. 506 (46 N. Y. Supp. 242), the plaintiff was injured by a truck driven by an employee of the defendants, who were executrix and executor, respectively, of a decedent's estate. In an action against the defendants in their representative capacity, it was ruled that no recovery could be had. In deciding that case it is said: "The executrix died after suit was brought, and, if any cause of action existed against her, it abated on her death." Further in the opinion it is observed: "The objection taken to the form of the complaint requires that it should be amended by continuing the action against August Finck individually, with appropriate allegations to charge him in some legal form with the negligence complained of." From the two cases last noted it would seem that a recovery could be had against an executor or an administrator personally of the damages sustained by another in consequence of the negligence of a servant of such personal representative. If, in those cases, the executor or administrator had expected to derive some advantage from the employees' labor, so as to make the

maxim of *respondeat superior* applicable, we admit that the conclusions thus reached are controlling. In the case at bar the evidence does not show any active negligence on the part of Winch that would render him amenable for the damages caused by the carelessness of a servant whom the complaint alleges was competent. As the defendant's liability is personal, he ought not to be held responsible unless he has been negligent in the discharge of some duty or obligation which he owed to Fetting.

Believing that the evidence offered at the trial was insufficient to establish such liability, and that no error was committed in granting the nonsuit, the judgment is affirmed.                                    AFFIRMED.