[L. A. No. 19900. In Bank. May 6, 1947.]

HAROLD R. JOHNSTON, Respondent, v. RALPH C. LONG
et al., Appellants.

Jennings & Belcher and Monroe & McInnis for Appellants.

Forrest A. Betts and Wm. H. Macomber for Respondent.

TRAYNOR, J.—Defendant appeals from a judgment entered in favor of plaintiff for damages for personal injuries sustained by the latter when an overhead door fell on him as he was entering a garage of the C. A. Gray automobile agency in San Diego. The garage was owned and operated by C. A. Gray during his lifetime. At the time of the accident it was operated as part of his estate according to the terms of his will and pursuant to section 572 of the Probate Code by Ralph C. Long and A. J. Verheyen as executors. In accordance with the wishes of the decedent as expressed in the will, the actual operation of the business was left in the hands of John Berger, who had been manager of the business during decedent's last illness. Plaintiff's injuries occurred when he was opening the door to make a delivery of gasoline before the premises were opened for business. The door was of the overhead type, operated by means of counterweights connected to the door by a wire cable. While plaintiff was opening the door the cable pulled from its fastening, and the door in falling shut cut off the end of plaintiff's nose.

Eight months after the accident occurred, the assets of the estate were distributed to J. O. Miller, as trustee, the estate was closed and the executors were discharged. Four months later plaintiff brought this action naming as defendants, J. O. Miller, the trustee; the San Diego Planing Mill Company, the company that had installed the door and put in a new cable before the accident; and Long and Verheyen, both as individuals and as executors of the estate of C. A. Gray. A demurrer filed by Miller, the trustee, was sustained without leave to amend. A demurrer was also sustained in favor of the San Diego Planing Mill and judgment was entered for that defendant but, on appeal, the ruling and judgment were reversed. (*Johnston* v. *Long,* 56 Cal.App.2d 834 [133 P.2d 409].) Demurrers filed by defendant Long were overruled. A. J. Verheyen, the coexecutor, died before the trial, and the action was dismissed as to him. Defendant, at the opening of the trial, objected to the introduction of any testimony against him in his representative capacity, but the objection was overruled and the case went to trial against Long, as an individual, Long, as an executor, and the San Diego

Planing Mill Company. Throughout the trial, Long also made several motions that the case be dismissed as to him in his capacity as executor, including motions for nonsuit and directed verdict, but all such motions were denied.

The jury returned a verdict for $87,575 "against defendant Ralph C. Long, an individual acting as executor of the estate of C. A. Gray, deceased," and a special verdict in favor of the defendant planing mill that there was no negligence on its part or on the part of its employee who had repaired the door. Defendant Long appeals on the grounds that an executor may not be sued in his representative capacity after the estate has been closed, the assets distributed, and he has been discharged as executor; that the verdict is indefinite and uncertain in that it does not disclose whether the jury intended to find against Long as an individual or against him as an executor; that after an estate has been closed and the executor discharged, the executor may not be held personally liable for the negligence of an employee in a business conducted by the executor pursuant to section 572 of the Probate Code; and that the manner in which the trial was conducted and the issues presented to the jury so prejudiced the defendant as to deprive him of a fair trial on the issue of his personal liability.

A basic issue in this case is whether an executor is personally liable for torts committed by employees of a business operated by him pursuant to section 572 of the Probate Code. An executor has always been liable for any torts committed by him in the administration of the estate. (*Eustace* v. *Jahns,* 38 Cal. 3, 21; see *Nickals* v. *Stanley,* 146 Cal. 724, 727 [81 P. 117]; *Rapaport* v. *Forer,* 20 Cal.App.2d 271, 378 [66 P.2d 1242]; cases collected 44 A.L.R. 637, 640.) Before the 1929 amendment to section 1581 of the Code of Civil Procedure (now Prob. Code, § 572), if an executor elected to carry on decedent's business without authorization in the will (see *Estate of Ward,* 127 Cal.App. 347, 353 [15 P.2d 901]), he did so at his own risk and his liability for anything that occurred in the course of conducting the business was a personal one, with no right of reimbursement from the estate. (*Estate of Burke,* 198 Cal. 163, 166 [244 P. 340, 44 A.L.R. 1341].)

Section 572 of the Probate Code provides:

"After notice to all persons interested in an estate, given in such manner as may be directed by the court or judge

thereof, the court may authorize the executor or administrator to continue the operation of the decedent's business to such an extent and subject to such restrictions as may seem to the court to be for the best interest of the estate and those interested therein.''

█ Defendant contends that since an executor authorized under this section to operate a decedent's business no longer does so at his own risk, he is not liable for torts committed in the course of business operations when he is free from fault, and that to construe the section otherwise would impose too heavy a burden on executors who must operate businesses. This contention overlooks not only the fact that the executor is not required to operate the business, but must petition the court for permission to do so, but the fact that the rule as to the personal liability of an executor for torts committed during the course of his administration is not confined to cases in which the executor carries on operations that are outside the scope of his authority. (See *Nickals* v. *Stanley, supra; Rapaport* v. *Forer, supra;* 44 A.L.R. 637, 640.) Personal liability for torts committed during operations that are otherwise within the proper scope of the executor's authority is not a new burden. There is nothing in section 572 to indicate that any change in the rule as to personal liability was intended. The principal effect of the 1929 amendment was to provide an authorization, should the will fail to provide one, for the executor to carry on the decedent's business. (*Estate of Ward, supra; Estate of King,* 19 Cal.2d 354, 359 [121 P.2d 716].)

Defendant also contends that the rule of *respondeat superior* cannot be applied against an administrator or executor who gains no personal advantage from the operation of a decedent's business. In making this contention, defendant relies on *Campbell* v. *Bradbury,* 179 Cal. 364, 371 [176 P. 685] and *Fetting* v. *Winch,* 54 Ore. 600, 607 [104 P. 722, 21 Ann.Cas. 352, 38 L.R.A.N.S. 379]. In *Campbell* v. *Bradbury,* this court held that an incompetent under guardianship was responsible for the negligent operation of an elevator in a building operated under the control of the guardian and rejected expressly any analogy to the liability of executors in similar situations. A judgment imposing liability on an incompetent to be paid out of assets controlled by a guardian is clearly distinguishable from a judgment imposing liability on an estate. The incompetent is a person and would still

be liable after the discharge or removal of the guardian, but the estate is not even a legal person and after distribution of the assets and discharge of the executor it no longer exists. The court in the Campbell case had someone before it upon whom the liability could be imposed, and there is some justification for avoiding circuity of action by imposing the liability initially on the party that would ultimately bear it even if the guardian were personally liable. The answer to this problem by the Oregon court in *Fetting* v. *Winch, supra,* solves nothing except that a plaintiff would have no right of recovery, no matter how just his case. In the Fetting case, although the estate was still open, the court held that the executor could be held in neither his individual nor his representative capacity. He was not individually liable because not personally negligent, and the estate was not liable because it could not commit a tort.

With regard to obligations incurred in the operation of businesses under section 572, it has been held that while the administration continues, contractual obligations are properly chargeable against the estate but do not become liens on the assets of the estate. (*Estate of Allen,* 42 Cal.App.2d 346, 348 [108 P.2d 973]; *Estate of Smith,* 16 Cal.App.2d 239, 241 [60 P.2d 574].) Defendant relies, however, on *California Employment Stab. Com.* v. *Hansen,* 69 Cal.App.2d 767, 770 [160 P.2d 173], in which the court stated that the obligations incurred in managing the decedent's business pursuant to section 572 are charges against the estate and that after a final decree of distribution the executor is not liable for contributions under the Unemployment Insurance Act when the claimant has failed to file a creditor's claim against the estate. Not only was that case concerned with the construction of the Unemployment Insurance Act, but there was no issue of fault on the part of the executor. Nor is it applicable if the plaintiff has no provable and liquidated claim against either the executor or the estate at the time the estate is closed.

Under the doctrine of *respondeat superior,* except where the rule may have been changed by statute, torts committed by employees of a trustee in the course of administration of the trust estate subject the trustee to personal liability. (Rest., Trusts, § 264, comment (b); cases collected, 3 (pt. 2) Bogert, Trusts and Trustees, 532; 2 Scott on Trusts, § 264; 43 Harv.L.Rev. 1122, 1124.) Most cases have recognized

that the same rules determine the personal liability of an executor for torts committed in the course of administration. (See *Kirchner* v. *Muller,* 280 N.Y. 23, 28 [19 N.E.2d 665, 127 A.L.R. 681] ; *Clauson* v. *Stull,* 331 Pa. 101, 103 [200 A. 593] ; cases collected 43 Dick L.Rev. 143 ; 44 A.L.R. 637, 640 ; 3 (pt. 2) Bogert, *op. cit. supra,* 533.) Except for the Oregon case of *Fetting* v. *Winch, supra,* the cases hold that the doctrine of *respondeat superior* is applicable to an executor and that he is personally liable for the torts of employees. (*Fisher* v. *McNeeley,* 110 Wash. 283, 284 [188 P. 478, 14 A.L.R. 369] ; *Gatti-McQuade Co.* v. *Flynn,* 79 Misc. 430, 431 [140 N.Y.S. 135] ; *Kalua* v. *Camarinos,* 11 Hawaii 557, 558 ; see Bogert, *loc. cit. supra.*)

The rule of personal liability of a trustee or executor for the torts of his agents in the course of administration is now generally qualified by giving the executor or trustee a right to reimbursement against the assets of the estate when he is personally without fault. (Rest., Trusts, § 247 ; cases collected 3 (pt. 2) Bogert, *op. cit. supra,* § 734 ; Scott, *op. cit. supra,* § 247 ; 44 A.L.R. 637, 676.) The restatement also provides that when the claim against the trustee is uncollectible because his personal assets are insufficient, the plaintiff may reach the trust assets to the extent that the trustee would have had a right of reimbursement. (Rest., Trusts, § 268 ; see, also, Scott on Trusts, § 268 ; Stone, *A Theory of Liability of Trust Estates for the Contracts and Torts of the Trustee,* 22 Columb.L.Rev. 527.) A few cases have gone further and allowed the trustee to be sued in his representative capacity in order to avoid circuity of action. (*In re Raybould* (1900), 1 Ch. 199, 201 ; *Ewing* v. *Wm. L. Foley, Inc.,* 115 Tex. 222, 234 [280 S.W. 499, 44 A.L.R. 627] ; *contra, Kirchner* v. *Muller, supra.*) None of these authorities, however, holds that the trustee is absolved from personal liability (see Stone, *loc. cit. supra*), and it is clear that any right of action that the plaintiff has against the estate is purely a derivative one.

■ When the executor carries on the decedent's business with proper authorization, there is no doubt that contractual obligations properly incurred are chargeable against the estate and that tort liability, where the executor is not personally at fault, should ultimately be borne by the estate. If section 572 has any effect on the question of tort liability of the estate, the purpose of that section as well as the purpose of any authorization in the will for the carrying on of the

business may be fully carried out by applying the rules of the Restatement of Trusts in regard to such liability as well as the representative's right of reimbursement out of the assets of the estate.

■ It has been contended, however, that the doctrine of *respondeat superior* should apply directly against the executor in his representative capacity and not subject him to personal liability when he is without fault. Although this precise question has never previously been decided by the California courts, there are good reasons for not departing from the general rule. To hold the estate rather than the executor primarily liable for the torts of the agents of the estate, it would be necessary to apply the rules governing the liabilities of a corporate officer and to abandon those governing a trustee, which have heretofore been held applicable to executors. It is clear that an officer of a corporation is not liable under the doctrine of *respondeat superior* for the torts of corporate employees except where the officer is at fault. The liability falls upon the corporation. Unlike a corporation, however, an estate is not a legal or corporate entity (*Tanner* v. *Best,* 40 Cal.App.2d 442, 444 [104 P.2d 1084]) and cannot be a principal. ■ Nor can the executor properly be regarded as the agent of the heirs or distributees, for his authority is derived from the will, and the control that is exercised over him is the control exercised by the probate court. (*Eustace* v. *Jahns,* 38 Cal. 3, 22.) His position is more nearly that of a trustee or of the decedent himself than that of an agent. The employees are thus regarded as his employees and his liability for their actions should be that of any employer. (*Kalua* v. *Camarinos,* 11 Hawaii 557, 558.)

■ Moreover, even if it be assumed possible by some procedure to hold the estate directly liable for the torts of employees without any right against the executor personally, where the executor is not personally at fault, there are practical objections to such a procedure. Under the existing system of administration such a procedure would not afford the heirs adequate protection. The only method available for reaching the assets of the estate is an action against the executor in his representative capacity. (*Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94, 99 [141 P. 922, Ann.Cas. 1915D 742, 52 L.R.A.N.S. 1152] ; *Tanner* v. *Best, supra.*) If the plaintiff could recover directly from the estate in an action against

the executor in his representative capacity, the heirs would have no assurance that the question of the personal fault of the executor would be properly tried. It would not be to the interest of either the plaintiff, who would be attempting to recover out of the assets of the estate, or the defendant, whose interest as an individual and as an executor would be in conflict (see *Kirchner* v. *Muller,* 280 N.Y. 23, 28 [19 N.E.2d 665, 127 A.L.R. 681]), to show personal fault on the part of the executor. Under the general rule that the executor is personally liable for the torts committed by him or his agents in the course of administration, the plaintiff may recover a judgment against the executor personally and the question of the executor's fault is determined in the probate court, where the interest of the heirs may properly be protected. (See Atkinson on Wills, 611.)

It is contended that this application of the *respondeat superior* doctrine may have harsh results if the executor is not able to recover against the estate and his own property is subject to execution under the judgment. Ordinarily, if the executor is without fault he is protected by his right of reimbursement out of the assets of the estate. Moreover, this application of the doctrine of *respondeat superior* is no harsher than its usual application to a principal who may gain no profit from the actions of his agent (*Silva* v. *Providence Hospital,* 14 Cal.2d 762, 775 [97 P.2d 798]) and there is no estate from which he can get reimbursement. The principal justification for the application of the doctrine of *respondeat superior* in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business. (See Smith, *Frolic and Detour,* 23 Columb.L.Rev. 444, 456 et seq.) Under the broad power granted to the probate court under section 572 of the Probate Code, the court may require, as a condition to the right to continue decedent's business, the executor to insure against any tort liability arising out of the conduct of the business, with the premiums for such insurance payable out of the assets of the estate as a proper expense of the business.

In the present case, even if there were either a direct or derivative right against the executor in his representative capacity, defendant Long could not be held liable in that capacity, for he was no longer an executor and there was no estate for him to represent at the time of the suit. The pur-

pose of such a suit is to reach the assets of the estate under the executor's control. (*Golden Gate Undertaking Co.* v. *Taylor, supra;* see *Sterret* v. *Barker,* 119 Cal. 492, 494 [51 P. 695].) Where the executor has been discharged and the estate distributed, the executor is therefore no longer subject to suit in his representative capacity. (*Union Savings Bank* v. *De Laveaga,* 150 Cal. 395, 398 [89 P. 84].) There would be no purpose in such a suit, for the executor has no assets of the estate under his control.

Similarly, after an executor has been removed, his connection with the estate is severed and a judgment against him does not bind the estate. (*More* v. *More,* 127 Cal. 460, 462 [59 P. 823].)

. In this case, therefore, the plaintiff could proceed directly against the assets of the estate only by suing the distributee. This action was originally instituted against the distributee as well as against the executors, but a demurrer was sustained without leave to amend, and a judgment, which has now become final, was entered in favor of the distributee. Since the distributee is not a party to this appeal, it cannot be decided in this case whether the executor has a right of indemnity against the distributee to the extent of the assets distributed. (See Rest., Trusts, §§ 249(2) and 279 for the restatement rules as to the trustee's right of indemnity after distribution and the derivative rights of a tort plaintiff.)

The suggestion that a plaintiff should have only a direct right against the distributee after an estate has been closed and the assets distributed is completely unsupported by authority. Moreover, such a rule would impose a considerable burden on the plaintiff in a case in which the assets are widely distributed among many legatees, who may all be residents of other jurisdictions and have no property within this state. There are not, therefore, sufficient reasons for deviating from the general rule of personal liability of the executor for the torts of himself and his agents in the course of administration, and it is clear that in closing the estate an executor does not thereby cut off his personal liability for such torts.

Although defendant Long could have been held personally liable for the injuries sustained by the plaintiff in this case, the question remains whether he was denied a fair

trial on the issue of his personal liability. The theory of the plaintiff's case against defendant was that he was a business invitee on the premises operated by the defendant and that the falling of the door was caused either by the negligence of an employee of the garage in repairing the door or by the failure of the garage employees to discover a dangerous condition that might have been discovered by reasonable inspection. Although there was some conflict in the evidence as to plaintiff's right to be on the premises at the time of the accident and as to his right to operate the door, there was substantial evidence to support the conclusion that his status was that of a business invitee and that he had the right to open the door.

The basis for the theory that the accident occurred because of the negligence of an employee in repairing the door was the failure of an employee named Budhi, the building superintendent, to have a nut welded on the end of the wire cable. The cable was replaced shortly before the accident (the exact date was never established), by a carpenter employed by the codefendant, the San Diego Planing Mill Company. This carpenter, who had also originally installed the door, testified that he did not tie the end of the wire cable to prevent it from unwinding, as required by the instructions that came with the original hardware. There was, therefore, sufficient evidence to warrant an inference that the cable became disconnected because of unwinding of the cable. The carpenter testified that he did not tie the cable because at the time of the original installation Budhi had had a nut welded to the end of the cable, and on replacing the cable the carpenter understood that this welding was to be done again. There was evidence to the effect that such welding tended to weaken the cable and that, for this reason, it was not done on similar doors in San Diego. Budhi testified that he did not have anything done to the door because the carpenter informed him that it was unnecessary. This testimony was corroborated by another witness. There was therefore sufficient evidence upon which the jury might have concluded that the accident was caused by the negligence of the employees of either of the defendants or of neither. (See *Johnston* v. *Long*, 56 Cal.App.2d 834, 837 [133 P.2d 409], for the law of the case as to the liability of the defendant planing mill.)

The other ground on which defendant may have been held liable was the failure on the part of the garage employees

to use reasonable care to discover a condition that involved an unreasonable risk of harm to those using the door. (Rest., Torts, § 343; *Barbieri* v. *Law,* 209 Cal. 429, 433 [287 P. 464].) The ends of the cable were not properly tied, and the evidence was sufficient to warrant an inference that this condition was the cause of the cable's becoming unfastened. Although there was evidence that the accident might not have happened had plaintiff opened the door in a proper manner, the questions of causation and of contributory negligence were submitted to the jury under proper instructions, and there is substantial evidence that a reasonable inspection would have disclosed a condition involving an unreasonable risk of harm to anyone operating the door.

Defendant contends that the court erred in giving the following instruction:

"It was the duty of the defendant Ralph C. Long, to use ordinary care and diligence in keeping in repair the mechanism and appliances maintained by said defendant for the use of the passageway, and if you find from a consideration of all the evidence that the accident resulting in the injuries to plaintiff occurred by reason of a defect in said mechanism, or appliances, and find that such defeat either was known or, by the exercise of reasonable care, should have been known to the defendant Ralph C. Long, prior to the happening of the accident then you will find said Ralph C. Long to have been negligent with reference thereto, and if you further find that, without negligence on the part of plaintiff, such negligence was a proximate cause of the accident in question, your verdict will be in favor of the plaintiff and against the defendant Ralph C. Long."

It is defendant's position that since this instruction does not mention the status of the plaintiff, the jury was instructed that as a matter of law Long was liable whether or not the jury concluded that plaintiff was an invitee. There is no merit whatever in this contention, for the instruction complained of was read to the jury along with the instructions on the question of plaintiff's status. The paragraph immediately preceding the foregoing quotation makes it clear that the instruction complained of was given to the jury with reference to plaintiff's duty to a business invitee. Two sentences above the matter quoted the court stated, "you are instructed that *where one as an invitee* is lawfully using an entry or passageway, he is not required to employ any ex-

traordinary degree of care or circumspection for the ascertainment of whether or not the entry or passageway is safe." (Italics added.) The sentence immediately preceding the challenged instruction explains that a business invitee, if not himself negligent, has a right to rely on the presumption that the passageway is maintained in a proper and safe condition. The instruction complained of then goes on to explain the defendant's duty to such an invitee.

Following the paragraph complained of, the trial court again referred to the duties of the defendant to an invitee. The next paragraph makes clear what the jury was told by these instructions. It reads as follows:

"You will note that there are two questions to consider in connection with whether plaintiff received injuries as a result of lack of care on the part of the proprietor or proprietors of said building. The first question is with reference to his status upon the premises and *he must prove that he was an invitee in order to establish that he was a person toward whom reasonable care must be exercised. It is then to be determined whether it has been established that* the proprietor of said premises failed to use ordinary care or negligently failed to use ordinary care and whether such negligence was the proximate cause of plaintiff's injuries." (Italics added.)

Defendant also contends that the court held as a matter of law that defendant was the proprietor of the business. The instructions continue, however, as follows: "It is, therefore, an essential element of plaintiff's cause of action against the defendant, Ralph C. Long, to *establish* by a preponderance of the evidence that the defendant, Ralph C. Long, was a proprietor of said building." (Italics added.) Following this instruction there is an instruction that Long is not liable as an executor. The rule of *respondeat superior* is then explained to the jury. There was clearly no error in referring to defendant as a proprietor of the business, for, as an executor authorized to run the business, he was liable as the proprietor.

The second instruction complained of by defendant reads as follows: "You are instructed that if the defendant Ralph C. Long by and through his officers or agents, requested the defendant Planing Mill Company to repair the door, *and if the evidence establishes that said Long paid therefor,* then the law imputes to said Long knowledge of the condition and necessity of repair." (Italics added.) Petitioner contends

that by this instruction, the trial court, in effect, "instructed the jury, as a matter of law, that if a bill was rendered for the repairs upon the door and was paid by Long the full knowledge of the condition was imputed to Long as a matter of law." The instruction, however, merely informed the jury that Long was liable for the acts of his agents under the doctrine of *respondeat superior* and that their knowledge of the condition of the door at the time of the repairs was imputed to him. By paying the bill for the repairs, Long merely ratified the agency in getting the repairs done. In any event, defendant Long, as an executor of the estate authorized to run the business, was liable for the negligence of the employees of the estate in regard to the condition of the door. Whether or not he paid the bill himself was therefore immaterial. For this reason the instruction was at most irrelevant and could not have been prejudicial.

 Defendant also contends that the court erred in refusing to give the following instruction requested by defendant Long:

"In considering the question of whether a person entering the premises of another is an invitee, you are instructed that a person entering premises or having authority to enter premises for business purposes becomes an invitee in the premises to the extent reasonably necessary for carrying on the business purposes. The fact, however, that a person is such an invitee does not make him an invitee to all parts of the premises, nor does it make him an invitee for the purpose of using any and all appliances that may be on the premises. In such instance he is an invitee only to the extent reasonably to be expected in connection with the business purposes for which he is invited to enter the premises. Such invitation implies the right to enter such portions of the premises and to make use of such appliances therefor as are reasonably to be expected in connection with the purpose of the invitation but no further."

Defendant makes the following concession in his opening brief: "It has been at all times conceded that for the purpose of delivering gasoline he [plaintiff] was an invitee." Defendant's only claim of error, therefore, is that the jury was not properly instructed as to the scope of the invitation and as to the burden of proof thereon. The questions of fact for the jury, as heretofore stated, involved plaintiff's right to be on the premises at the time of the accident and his

right to operate the door. The instructions given by the trial court presented these issues to the jury, and the jury was properly instructed in regard to the burden of proof. Therefore the trial court did not err in refusing defendant's requested instruction.

The court instructed the jury as to the status of an invitee in the following terms:

"One who goes upon the premises of another as a business visitor at the express or implied invitation of the owner or occupant, and in connection with some mutual business interest with the occupant or with the latter's own business, is called in law an invitee. *You are to determine whether the plaintiff Johnson was or was not an invitee upon the premises* and for the use thereof, *at the time and place* of the happening of the accident." (Italics added.)

The court also instructed the jury with respect to the duty of a proprietor to a business invitee and then stated, "You will note that there are two questions to consider in connection with whether plaintiff received injuries as a result of lack of care on the part of the proprietor or proprietors of said building. The first question is with reference to his status upon the premises and *he must prove* that he was an invitee in order to establish that he was a person toward whom reasonable care must be exercised." (Italics added.) The jury was properly instructed as to the meaning of the requirement that the plaintiff must prove the material elements of his case.

The jury was further instructed "that where without negligence on his part a person is injured while *lawfully* using an entry or passageway upon which he is a business invitee, and where such injuries thus received come as a proximate result of any negligence on the part of the party charged with the maintenance of such entry or passageway, the injured party is entitled to recover.

"Toward an invitee, he who extended the invitation, express or implied, is obligated to refrain from active negligence and to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee *in the reasonable pursuit of a purpose embraced within the invitation.*" (Italics added.)

The jury was instructed in effect that it was a question of fact for it to determine whether plaintiff had a right to operate the door, i. e., whether plaintiff was lawfully using the doorway in the reasonable pursuit of the purpose embraced

within the invitation. It was explained to the jury that plaintiff had alleged ''that with the knowledge and acquiescence of defendants and for the purpose of making . . . deliveries of gasoline he was accustomed to enter the garage building through a large overhead lift type of door.'' The jury was instructed that defendant Long denied this and other allegations of plaintiff. They were also told that the codefendant planing mill claimed that the automobile company ''did not at any time, invite the plaintiff or other persons than its own servants, employees and agents to use said door, or any apparatus connected therewith. . . .''

The instruction requested by defendant Long would have presented the last issue more clearly to the jury, but since the issues referred to in that instruction were adequately presented to the jury in other instructions, it was not error to refuse defendant's instruction.

Although there was sufficient evidence to sustain a judgment against defendant Long personally, the evidence was conflicting, and the question remains whether there were any errors committed during the course of the trial that may have prejudiced defendant by leading the jury to reach its verdict on some ground other than the evidence. Defendant contends that the court erred in submitting to the jury a form of verdict that was bound to be confusing and in ruling on the right to sue defendant as executor after the estate was closed, and that the effect of these errors was to cause the jurors to believe that by returning a verdict ''against defendant Ralph C. Long, an individual acting as executor of the estate of C. A. Gray, deceased,'' they were imposing a liability upon the defendant that would ultimately be borne by the estate and not by Long as an individual.

The verdict in question was submitted to the jury at plaintiff's request, and it was the only form of verdict submitted with regard to the liability of defendant Long. The trial court refused defendant's request to have the verdict clarified by the jury. Defendant contends that this was error on the ground that the verdict is too vague and uncertain to support a judgment against defendant Long. The verdict, however, is ''against defendant Ralph C. Long'' and the phrase ''an individual acting as executor of the estate of C. A. Gray, deceased'' is on its face merely descriptive. The verdict may be modified by eliminating this description. (See *St. Mary's Hospital* v. *Perry*, 152 Cal. 338, 340 [92 P. 864] ;

*Kirchner* v. *Muller*, 280 N.Y. 23, 28 [19 N.E.2d 665, 127 A.L.R. 681].) ▆▆▆ Defendant invoked a statement made by the foreman of the jury and an affidavit of another juror, to show that the jury understood that the verdict was given against Long in his representative capacity. A verdict may be impeached by the jury, however, only by a showing that it was arrived at by chance. (*Toomes* v. *Nunes*, 24 Cal.App.2d 395, 399 [75 P.2d 94]; *Saltzman* v. *Sunset Tel. etc. Co.*, 125 Cal. 501, 505 [58 P. 169]; see 23 Cal.L.Rev. 218.)

▆▆▆ Defendant contends that it is apparent from the record that the jurors were confused by the form of the verdict and that certain other alleged errors during the trial led them to return a verdict in the belief that it was against the estate and that liability thereunder would be borne by the distributee and not by Long. Defendant's claim of prejudice is based on an analogy to the prejudice involved in informing a jury that a defendant in a personal injury action carries liability insurance.

It cannot be disputed that there was considerable confusion on the part of counsel for both parties and on the part of the trial judge as to the nature of the liability of an executor for the torts of an employee of an estate, particularly when the estate is closed before the action is brought. It does not follow, however, that the confusion was communicated to the jury, for most of the discussion of the nature of Long's liability occurred in the absence of the jury.

The theory of plaintiff's right to sue Long in a representative capacity presented at the trial was that although the estate had been closed, Long was liable as an individual acting as an executor, a vague status that apparently includes his capacity both as an individual and as an executor. It was contended that the verdict and judgment should describe both capacities because defendant Long had a right of reimbursement out of the assets of the estate and that if it was error so to describe defendant Long, this court, on appeal, should modify the judgment in accord with its view of the law. "We must sue the executor and we must sue him as an individual but we do not sue him as Long. We sue him as Ralph C. Long, the individual, who is the executor." It was claimed that this was necessary because "he is not individually responsible" and the estate will ultimately have the burden of any judgment against him. This theory, however,

was not presented to the jury, and it cannot therefore be relied on to show that the jury was prejudiced against defendant Long.

The record indicates, however, that in the presence of the jury panel but before any of the prospective jurors were impaneled, plaintiff's counsel made certain statements that should not have been made in the jury's presence. In reply to a question by defendant's counsel as to whether plaintiff considered the action against Long as one against him personally, counsel for plaintiff stated that the situation is, "That you sue the executor individually and that under— at least the dictum of the cases that we have, and certainly under the just rule—that obligation of the individual is transferred to the estate, eventually." In answer to a question by the trial court as to whether the plaintiff had attempted to charge the executors (Long and Verheyen) "with liability as individuals in a capacity other than as executors of the estate," counsel replied that he didn't know. "But I am only trying to say that the business is operated by them and that under the law we do just what your Honor has said, strange as it might be, we sue them individually because they are running the business and apparently the circuitous approach is this: That if they incur this liability, and they have incurred it not because of any misfeasance of their own, they are entitled to recover from the estate." At the time these statements were made defendant Long made no objection that they were prejudicial but merely questioned the correctness of plaintiff's view of the law that the liability was directly or indirectly that of the estate.

Defendant claims that the statements constituted misconduct of counsel and urges this alleged misconduct as a ground for reversal, having called the trial court's attention to the prejudicial character of the statements in an affidavit in support of his motion for a new trial. Since defendant made no objection to the statements at the time they were made and answered them on their merits, he waived any right to claim that they constituted misconduct. If the statements were prejudicial, defendant should have called the trial court's attention thereto by a proper objection at the time they were made, thus giving the trial court an opportunity to avoid any possible claim of prejudice by discharging the jury panel and having the jury selected from a new panel that had not heard the remarks. (See *Hicks* v. *Ocean*

*Shore Railroad, Inc.,* 18 Cal.2d 773, 787 [117 P.2d 850]; *Estate of Golden,* 4 Cal.2d 300, 309 [48 P.2d 962]; cases collected 108 A.L.R. 756, 757.) Nor can defendant rely on these statements to show that any error committed during the subsequent course of the trial resulted in prejudice. Since defendant's counsel was willing at the time to discuss in the presence of the jury panel the question of the nature of the executor's liability, he contributed to any prejudice that may have resulted from this discussion. In any event, this discussion took place before the impaneling of the jury, and those members of the panel who later became jurors in this case had not yet been advised of the nature of the case they were to decide. It is doubtful whether they followed the remarks of counsel. Moreover, at the close of the trial, the jurors were instructed that they were not to consider any statements of counsel occurring during the course of the trial.

The defendant also contends that the error committed by the trial judge in ruling that Long was subject to suit in a representative capacity contributed to the alleged confusion arising from the form of the verdict. After the jury was impaneled and at the commencement of the trial of the case, defendant Long objected to the introduction of any testimony against him in a representative capacity. The trial court overruled the objection. This ruling was made in the jury's presence, but there was no discussion at that time of the nature of Long's liability. The matter was subsequently discussed in the absence of the jury, and the trial judge again ruled that Long could be sued as an executor. The same ruling was made on defendant's motion for a directed verdict, but the jury was not present and could not have been prejudiced by the ruling.

The only basis for the claim that the rulings in question constituted prejudicial error is the fact that after the first ruling defendant Long thereafter defended the case in both capacities. It is true that this served to call the jury's attention to the fact that defendant Long had been an executor of the estate, but obviously it was necessary for the jury to be informed of this fact, for the very basis of the case against Long was that he had been one of the executors at the time the injury occurred. Even if it be assumed that the effect of the erroneous ruling of the trial court was to place an added and unnecessary burden on defendant Long to defend the case in a nonexistent capacity, it does not follow

that the jury assumed that any judgment against Long would have to be paid by the estate that he was supposed to represent. If the jury made this assumption it was in the face of a clear and correct instruction to the contrary. The trial court instructed the jury as follows: "You are further instructed that under the laws of the State of California no action may be maintained against the estate of C. A. Gray or against the defendant, Ralph C. Long, in his capacity as an Executor of said estate. As to the defendant, Long, the action which is submitted to you for determination is against him as an individual. The two defendants, therefore, involved in this action are Ralph C. Long and San Diego Planing Mill, a corporation."

At another point in the instructions the court reminded the jurors that they were not concerned with the liability of the estate or of Long as an executor. They were informed that their attention had been "called to the fact that the estate of C. A. Gray, deceased, is not, under the law of this state, answerable to the plaintiff in this action. An executor of an estate who operates a business is answerable, if at all, as an individual." In view of these instructions, it cannot be assumed that the jury believed that the judgment was against Long in any capacity other than as an individual or that any liability that might result from their verdict would be borne by anyone but Long.

Defendant contends, however, that these correct instructions may not be relied on to sustain the jury's verdict because the jurors were also instructed that if the codefendant planing mill was negligent and this negligence combined with the negligence, if any, "of the defendant Ralph C. Long, as an individual and executor, to proximately cause said injury . . ., then your verdict will be in favor of the plaintiff and against all defendants." This instruction, by itself, might be understood as informing the jury that Long could be held liable as an executor and as an individual, but in view of the instruction that he could not be sued as an executor and that the only defendants involved in the action were Ralph C. Long and San Diego Planing Mill, it may not be assumed that the jury so interpreted this instruction. When the three instructions are considered together, it is apparent that the jury was correctly instructed that the two defendants in this case were Long as an individual and the codefendant planing mill; that neither the estate nor Long as an executor was

subject to suit; that if a verdict were returned against Long it would be because he was answerable for the accident as an individual; and that if the negligence of an employee of the planing mill combined with the negligence of an employee of the estate to cause the accident, then both Long as an individual and the planing mill would be liable. Whether or not the confusion among counsel and the trial court as to the nature of the tort liability of an executor after his discharge was unavoidable, it is apparent from the record that aside from the statements of plaintiff's counsel in the presence of the jury panel, which were waived by defendant, there was nothing presented to the jurors that may be used to show that the erroneous ruling and the form of the verdict resulted in confusing them to such an extent that they returned a verdict based on prejudice rather than upon the evidence before them.

 Defendant contends that the jury's verdict awarding plaintiff $87,575 is plainly excessive in view of the fact that about $73,000 of that sum constituted general damages. The verdict is undoubtedly high. Nevertheless, it is not the function of a reviewing court to interfere with a jury's award of damages unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts that it shocks the court's sense of justice and raises a presumption that it was the result of passion and prejudice. (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, 255 [116 P. 513].) The amount of the verdict must be viewed in the light of the evidence before the trial court. (*Zibbell* v. *Southern Pacific Co.*, *supra* at 254.) The trial court, in denying a motion for new trial, found that the verdict was. not excessive. This decision lends weight to the jury's award. (*Bisinger* v. *Sacramento Lodge No. 6*, 187 Cal. 578, 585 [203 P. 768]; *McSweeney* v. *East Bay Transit Co.*, 60 Cal.App.2d 807, 814 [141 P.2d 787].) There is considerable support in the evidence for the trial court's approval of the amount awarded.

It would accomplish no purpose to recite all the evidence relating to plaintiff's injuries. It may be noted, however, that for a period of over four years he has undergone thirty-one operations for the purpose of alleviating his disfigurement and he faces additional operations. The accident rendered him so unsightly that it would be unreasonable to expect him to forego restorative surgery. His doctors were highly qualified in plastic surgery, and they informed the jury at

length of the steps already taken to repair, in slight measure, the damage to his appearance. The operations were complicated and painful. Many of the operations consisted of the raising of pedicles from various parts of his body and attaching them first to parts of his face and then to his nose. This procedure was repeatedly unsuccessful, each attempt requiring new removals of substantial amounts of skin and flesh. For over four years plaintiff has spent a large part of his time in the hospital. It is difficult to predict how many remaining operations may be necessary.

Defendant concedes that plaintiff is ''very considerably disfigured'' and the likelihood is that he always will be. Since plaintiff is a salesman as well as a truck driver, he has suffered a substantial loss in earning capacity. A reviewing court does not ordinarily substitute its judgment for that of the jury and trial court, which have evaluated in terms of damages the pain, humiliation, disfigurement, and loss of earning capacity suffered by a plaintiff. (*Kelley* v. *Hodge Transportation System,* 197 Cal. 598, 610 [242 P. 76].) In view of the extensive testimony concerning plaintiff's medical history and the uncertainty of his future restoration, we conclude that the trial court did not err in its refusal to grant a new trial or to reduce the award on the ground of excessive damages.

Defendant, in reliance upon *Karr* v. *Parks,* 44 Cal. 46, also contends that the cost of plastic surgery was improperly allowed as a measure of damages. In the Karr case, decided in 1872, plaintiff sued to recover for services rendered and expenses incurred in the cure of wounds inflicted upon his infant daughter. Much of the expense was the result of surgical treatment for the removal of an unsightly disfigurement caused by the injury. This court held that any restoration undertaken by plaintiff was voluntary and could not be an element of damages in an action on his behalf. There were indications in the case that the infant had previously obtained a recovery based on the continuance of her deformity.

Any expressions in the Karr case to the effect that an injured party is not entitled to damages in the form of expenses incurred for restorative surgery made necessary by the negligence of defendant must be disapproved. (See Rest., Torts, § 924(c).) Present day standards no longer regard plastic surgery as a strange or foreign art. Indeed, there may

be occasions when an injured person would be required to undergo plastic surgery to mitigate damages. (*Goodwin* v. *Giovenelli,* 117 Conn. 103 [167 A. 87].) In the present case it was essential for plaintiff to undergo some restorative surgery because of the impairment of his breathing caused by the accident. It was also necessary to take steps to expedite the healing of the wound, which was retarded by a lack of blood supply to the injured member.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

EDMONDS, J.—As I read the record, the form of the verdict, combined with the erroneous rulings requiring Long to defend as executor, was bound to lead to confusion and undoubtedly gave the jury the impression that the judgment would ultimately be paid by the estate and not by him.

I agree that the court could modify the verdict by regarding certain terms as descriptive, but it is quite certain that the jury did not so regard them. The verdict may not be impeached, but when its form is considered in connection with the other errors throughout the trial, there is a clear record showing that, although it read against Long, in effect, the jurors believed it to be an award of damages against the estate for which Long would be indemnified.

The statements of plaintiff's counsel, made in the presence of the jury, that the liability was directly or indirectly that of the estate, should not be disregarded in determining whether the other errors committed during the course of the trial were prejudicial. At the time those statements were made, the trial judge had not yet ruled upon the question as to whether Long was properly sued in his representative capacity. Shortly thereafter, Long objected to the introduction of any testimony against him in a representative capacity. The objection was overruled in the presence of the jury. Subsequently, the matter was argued by counsel in the absence of the jury. Long then called attention to the prejudicial effect of a ruling requiring him to defend before the jury in the dual capacity of an individual and an executor. But the court decided that he could be sued as an executor, evidently upon the theory of his liability in some form of "individual representative capacity." This is evident from the trial judge's statement that, although probably the estate was not liable, Long could be sued as an executor and should

be described as an individual and as an executor in order to protect any right of recovery out of the assets of the estate. This discussion did not take place in the jurors' presence, but they were aware of the ruling upon the motion to the effect that Long was properly sued as an executor. The effect of this erroneous ruling was to force Long to defend as executor.

The prejudicial effect of these errors, according to the plaintiff, was cured by a correct instruction that no action could be maintained against the estate or against Long in his capacity as executor and that Long was liable only personally. The effect of that instruction must be considered, however, in connection with the directly contrary rulings of the trial court. The jurors knew that the suit was prosecuted against Long in his capacity as an executor and he had defended in that capacity. The instruction is entirely inconsistent with the only form of verdict submitted to the jury providing for a recovery against Long. Moreover, the instructions themselves were inconsistent, for the court also instructed the jury that if the codefendant planing mill was negligent, and its negligence combined with the negligence, if any, "of the defendant Ralph C. Long, as an individual and executor, to proximately cause said injury . . ., then your verdict will be in favor of the plaintiff and against all defendants."

Unquestionably it was necessary for the jury to be informed of Long's service as an executor of the Gray estate, but there is no basis for an assumption, from that fact alone, that the executor would have a right of indemnity, or that the liability was directly or indirectly that of the estate. Nor was it necessary to submit to the jury a confusing form of verdict.

The plaintiff takes the position that the errors were unavoidable because of the unsettled state of the law on the liability of an executor. The basis of his contention is that neither the plaintiff nor the trial judge knew the nature of the executor's liability after the estate was closed because the question has not previously been decided by this court. However, the unsettled state of the law on any point which confused the plaintiff and caused the trial court to commit error does not preclude Long from complaining of the prejudicial effect of that error.

Moreover, even if it be assumed that the question of the liability of the executor in his representative capacity was

so unsettled that it could not be determined by a trial court and was properly left for initial determination on appeal, there was no necessity to submit to the jury a form of verdict that, together with the ruling of the trial court, would reasonably be understood by the jury as imposing some form of liability against the estate. The least that could have been done to mitigate the confusion and prejudice in the minds of the jurors was to submit to them a verdict that could be understood only as imposing liability against the executor personally. Certainly the jury could have been instructed, clearly and without conflict, that any award of damages against Long was his personal obligation and not that of the estate, either directly or indirectly. In that event, if it were later determined upon appeal that the liability could be imposed against the estate, no prejudice would have resulted to the plaintiff, because the ability to pay a judgment has no relation to the question as to who is at fault.

The prejudicial character of the errors in this case is analogous to the prejudice involved in allowing a jury to be informed that a defendant in a personal injury action carries liability insurance. (*Schlenker* v. *Egloff,* 133 Cal.App. 393, 398 [24 P.2d 224]; see *Pierce* v. *United Gas & Electric Co.,* 161 Cal. 176, 188 [118 P. 700]; cases collected, 56 A.L.R. 1418; 105 A.L.R. 1319.) There is the same probability that the jury would be more inclined to find a verdict against Long if it believed he would be indemnified than if it understood that he would have to bear the burden alone. (See *Brown* v. *Yocum,* 113 Cal.App. 621, 625 [298 P. 845].) Although there was no showing of bad faith, the errors, insofar as they impressed the jury with the idea that the judgment against Long would be paid by the estate, were prejudicial and ground for reversal, because the question of defendant's responsibility was so close that a verdict in his favor would have been at least equally reasonable (see *Citti* v. *Bava,* 204 Cal. 136, 139 [266 P. 954]; *Schlenker* v. *Egloff, supra*), and there is every reason to believe that the errors substantially influenced the result.

It is contended that the errors were not prejudicial upon the ground that the distributee will ultimately have to pay the judgment, because plaintiff concedes that the record shows no personal negligence of Long. Obviously, the distributee is not bound by the plaintiff's concession. It was not necessarily to the interest of either the plaintiff or Long to show personal negligence, and it cannot be assumed that

the evidence in litigation to which the distributee was a party would not show that Long, as executor, was personally at fault, or that he violated some duty to the heirs that would foreclose any right of indemnity. Also, since the distributee is not a party to this appeal, the question of Long's right of indemnity against the distributee cannot now be determined.

For these reasons, in my opinion, the judgment should be reversed.

Spence, J., concurred.

SCHAUER, J.—I dissent. In liberal construction of section 572 of the Probate Code I would hold that in such a case as this the executor should be liable exclusively in his representative capacity. When an executor conducts the business of an estate under authorization of the court and the Probate Code he is not personally liable for the contract debts and obligations incurred in carrying on such business. No more, I think, should he, in the absence of personal fault, be personally liable for torts of estate employes. His actions in the premises are purely in the capacity of executor. The employe whose fault causes the injury to another is not the employe of the executor personally. He is the employe of the executor only in the latter's representative status. The doctrine of *respondeat superior,* then, should pass the burden on to the real employer, to the executor in his representative capacity but not against him otherwise.

It is asserted that the law which holds that an officer of a corporation is not liable under the doctrine of *respondeat superior* for the torts of corporate employes except where the officer is at fault, cannot be applied to executors; that the corporate employe's liability can be related directly to the corporation because the latter is an entity and can be sued, but that the estate of a decedent is not an entity and cannot be sued. I do not find this proposition persuasive. If the estate of a decedent is enough of an entity to carry on a business, to contract and pay debts, and realize profits and losses, it should be enough of an entity to be sued. In fact the books are replete with cases in which estates, acting through the executors or administrators, have sued and been sued. The Probate Code (see §§ 572, 573 et seq. and Code Civ. Proc., § 369) certainly authorizes such proceedings in relation to

causes ex contractu. The question here is: Is this particular tort action authorized as against the executor in his official capacity?

Section 572 (Prob. Code) declares that "the court may authorize the executor . . . to continue the operation of the decedent's business to such an extent and subject to such restrictions as may seem to the court to be for the best interest of the estate and those interested therein." The operation of a business ordinarily includes participation as a party plaintiff or defendant in such litigation as may arise from normal conduct of the business. Tort actions are not abnormal in the conduct of a business. Surely it cannot be seriously asserted that a business such as that here involved could be carried on for extended periods without the definite possibility of tortious conduct of some employe; human experience demonstrates the contrary.

Of course, it is not intimated that the court in authorizing the conduct of the business intended to authorize the commission of torts by employes. But the application of the doctrine of *respondeat superior* does not depend on express or intentional authorization of tortious conduct. (16 Cal.Jur. 1101-1102, § 61.)

It seems to me that the declaration in the majority opinion that "If section 572 has any effect on the question of tort liability of the estate, the purpose of that section as well as the purpose of any authorization in the will for the carrying on of the business may be fully carried out by applying the rules of the Restatement of Trusts in regard to such liability [personal on the trustee] as well as the representative's right of reimbursement out of the assets of the estate" is thoroughly unrealistic, unwarranted and impractical. If it is to be recognized that the liability is ultimately and in justice that of the estate, then that liability should be imposed directly on the estate rather than through the round-about method espoused in the opinion. The opinion says, in effect, that the nonnegligent executor is personally liable in legalistic form but not in actual substance because he may ultimately recover from the estate. Such method must inevitably tend to multiply litigation and often may result in leaving a nonnegligent executor with the actuality as well as the form of personal liability.

Section 572 (Prob. Code) in its present substance is before us for initial construction in this case. We should not,

on this open question, evolve a construction which seems so certain to produce multiplicity of suits, delays in final settlement of estates, and, at least occasionally, admittedly unjust actual responsibility, all stemming from the unrealistic concept that authorization to an executor to conduct a business in his official capacity does not carry with it authorization to sue or be sued *in the same capacity* in respect to torts committed in doing the very thing authorized.

The judgment in this case, as well as the verdict upon which it is based, is in such form and substance as to warrant its construction as running against the defendant Long solely as executor of the estate. So construed the judgment could well be affirmed unless precluded by the facts that Long had been discharged as executor and the estate proceedings closed, and not reopened, prior to institution of the action. The questions which would arise as to the competence of Long to defend as executor without reopening the probate proceedings, and as to the validity and enforceability of the judgment, if construed as suggested, I do not here reach because discussion thereof, in view of the majority holding, would be academic at this stage. The majority opinion construes the judgment as running against Mr. Long personally and as so construed affirms it. In my view it should be construed, and can properly be affirmed if at all, only as against Mr. Long as executor of the estate. If it cannot be affirmed against him in his representative capacity then it should be reversed and the cause remanded for further proceedings. Hence, regardless of what conclusion might be reached as to Mr. Long's capacity to defend as executor and as to the validity and enforceability of the judgment if construed to bind him only in his representative capacity, I am compelled to dissent from the majority's judgment and opinion.

Appellants' petition for a rehearing was denied June 4, 1947, and the opinion was modified to read as above. Edmonds, J., Schauer, J., and Spence, J., voted for a rehearing.