[Civ. No. 26582.   Second Dist., Div. One.   Jan. 30, 1963.]

MARY KATLEMAN, Plaintiff and Appellant, v. FIRST NATIONAL BANK OF NEVADA, Defendant and Respondent.

Leonard J. Meyberg for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, James W. Baldwin and John G. Flett for Defendant and Respondent.

LILLIE, J.—The pleadings disclose the following background. Plaintiff and Jacob Katleman were divorced March 1, 1950, and a property settlement agreement was approved by the decree; Jacob remarried March 2, 1950. On June 15, 1950, he died intestate, a domiciliary of the State of Nevada. On July 6, 1950, defendant Liberty Katleman, his widow, and defendant First National Bank of Nevada were appointed coadministrators of his estate by the Nevada court. In the Nevada probate proceeding plaintiff, on September 18, 1950, filed a creditor's claim for "that share of community property of deceased and plaintiff herein as she may be entitled to" which may not have been disclosed or included in the property settlement agreement. On November 10, 1950, defendants approved certain items therein and rejected the balance of the claim. Thereafter, in the Superior Court of Los Angeles County, on December 8, 1950, plaintiff filed the within action in accounting against defendants in their representative capacity as "Co-Administrators of the Estate of Jacob Katleman, also known as Jake Katleman, Deceased," to determine "plaintiff's rightful share to the undisclosed community property in California" and to establish the rejected portion of the claim she had previously filed in the Nevada proceedings. On March 6, 1951, defendants, in their representative capacity, filed an answer. Meanwhile, an ancillary administration of Jacob's California assets was commenced in the Superior Court of Los Angeles County; Liberty Katleman was appointed sole administratrix; respondent bank was not named. Plaintiff did not file her claim in the California proceeding and appeared therein only to object to final distribution of the estate to Liberty Katleman and her child. However, she finally agreed to a distribution of the California assets to Liberty Katleman and First National Bank of Nevada, as coadministrators of Jacob's estate in Nevada. Thus on May 2, 1957, an order of final distribution was entered in the California ancillary administration, and on April 29, 1958, Liberty Katleman was discharged as administratrix. At no time was defendant First National Bank of Nevada named an administrator of Jacob's estate in the California court, nor did it ever appear in the ancillary administration of the California estate. The only time defendant bank had any of Jacob's California assets in its possession was

during the period between May 2, 1957 (when they were distributed to it and Liberty Katleman as coadministrators), and February 27, 1961 (when the Nevada estate was closed and they were discharged); the only state in which defendant bank ever held these assets was in Nevada. The estate of Jacob Katleman was finally distributed and closed, and the Nevada court on February 27, 1961, finding they had fully discharged their duties, discharged Liberty Katleman and First National Bank of Nevada of all further duties, vacated their letters of administration and released them from further liability. Ten months later, on December 27, 1961, defendant First National Bank of Nevada, in the within action, noticed its motion to dismiss and for summary judgment. While the notice of appeal is not clear, we deem plaintiff's appeal to have been taken from the minute order granting the motion and from the judgment based thereon. The purported appeal from the minute order is dismissed.

Liberty Katleman and First National Bank of Nevada were sued herein solely as ''Co-Administrators of the Estate of Jacob Katleman, also known as Jake Katleman, Deceased,'' they answered in their representative capacity, and the pretrial conference order recites that the action is against defendants as coadministrators of the estate. Neither was sued as an individual; recovery was not sought against either in an individual capacity. After a substitution of attorneys for the bank, its new counsel filed on behalf of ''First National Bank of Nevada'' notice of motion to dismiss and for summary judgment; they failed to indicate in what capacity the bank was appearing, designating its appearance neither in an individual or corporate capacity nor as a representative of the estate. Based on the order granting the motion, the judgment simply named the bank as ''First National Bank of Nevada.'' Assuming a highly technical interpretation of the wording of the notice and judgment, appellant argues that inasmuch as counsel failed to designate in what capacity the bank appeared therein, its appearance was only ''in its individual capacity.'' She claims the lower court erred in granting the motion because only the bank, in its representative capacity, was sued, not the ''First National Bank of Nevada,'' and that the latter never answered the complaint.

The record before us fails to justify such a narrow view of the pleadings; and, as a representative of the estate, the bank was properly dismissed from the action. We do not doubt that the failure to designate the bank in its appearance on the

motion, as coadministrator of Jacob's estate, was due to counsel's inadvertence, for it is obvious from the sense of all of the pleadings filed prior and subsequent to the notice of motion that the bank at no time intended to appear in other than its representative capacity, that plaintiff intended to deal with the bank in only that capacity, and that the court, in granting the motion, believed it was dealing with the bank only as an administrator of the estate. Plaintiff intended to, and did, sue the bank only as a coadministrator of the estate (complaint, plaintiff's pretrial statement), and the bank thereafter appeared only in its representative capacity (answer) until it substituted new counsel, who thereafter neglected to designate the capacity in which the bank appeared. If we were to accept appellant's technical view, the motion to dismiss and for summary judgment (made on the sole ground that the court lacked jurisdiction over the bank in its representative capacity and moreover it had been discharged as an administrator of the estate), the argument on the motion (which assumed the bank had moved in its representative capacity), the order granting the motion (specifically supported by citations to the effect that, having been discharged, the bank in its representative capacity was no longer subject to suit), and the judgment based thereon, would have no meaning. The above leads to only one conclusion—that the lower court intended by its judgment to release from the suit the bank as coadministrator for the estate, and in its individual or corporate capacity it was never before or in the contemplation of the court.

The real issue is whether the bank, having been discharged as coadministrator, is still subject to suit in its representative capacity; if it is not, the lower court's ruling was proper. No recovery is sought against the bank except as coadministrator of Jacob's estate, and if the claim be deemed valid, recovery is sought only out of the estate assets. Plaintiff prayed for an accounting of the California assets by the bank as coadministrator, to establish the rejected portion of the claim she had previously filed in the Nevada proceedings, and for an order requiring the bank, as coadministrator, to pay the claim out of the estate. (Complaint, joint pretrial statement, pretrial conference order.) However, not only has the bank never been an administrator of Jacob's estate in California, but it has not been since February 25, 1961, and is not now, an administrator of the estate in Nevada, it having on that date been discharged by the Nevada court; and Jacob's

524

estate having been distributed and closed, neither administration nor probate estate exists in any jurisdiction.

■ It has long been established that when an estate has been distributed and the executor or administrator discharged, he is no longer subject to suit in his representative capacity for he no longer has under his control any assets of the estate; this is the rule even though the action be filed prior to his discharge. In *Union Savings Bank* v. *De Laveaga,* 150 Cal. 395 [89 P. 84], an action was brought against the executors of an estate *before* their discharge. A demurrer to the complaint was sustained on the ground that the claim upon which it was based had not been first presented to the executors. Pending appeal the administration of the estate was settled and closed and the executors discharged. The judgment was affirmed on the following ground: "The distribution of the estate and the discharge of the executors (the only persons sued in this action) is terminative of any right of action or right to a judgment by appellant in this case; there is no estate nor executors to represent it, and the further prosecution of the action cannot be of any avail or advantage to the appellant. (See the opinion in *Childs* v. *De Laveaga, ante,* p. 281 [89 P. 82].)

"Upon the showing made of the futility of any further prosecution of this action by the appellant, we think this judgment should be affirmed, and it is so ordered." (P. 398.)

Against the same executor was the companion case of *Childs* v. *De Laveaga,* 150 Cal. 281 [89 P. 82]. Controlling is the following language: "It appears, therefore, that there is no executor of said decedent nor any administration of the estate pending, and that no relief asked for by appellants could be made applicable or be enforced." (P. 285.)

The *De Laveaga* case, *supra,* (150 Cal. 395), with others, was cited in *Johnston* v. *Long,* 30 Cal.2d 54 [181 P.2d 645]. The court, finding that a jury verdict against an executor sued in tort after his discharge, in both his individual and representative capacity, was against him only in his individual capacity, held that in any event, as a matter of law, he was not subject to suit in his representative capacity after his discharge as executor. The court stated at pages 64, 65: "In the present case, even if there were either a direct or derivative right against the executor in his representative capacity, defendant Long could not be held liable in that capacity, for he was no longer an executor and there was no estate for him to represent at the time of the suit. The purpose of such a suit is to reach the assets of the estate under the executor's

control. (*Golden Gate Undertaking Co.* v. *Taylor, supra* [168 Cal. 94 (141 P. 922, Ann. Cas. 1915D 742, 52 L.R.A. N.S. 1152)]; see *Sterret* v. *Barker,* 199 Cal. 492, 494 [51 P. 695].) Where the executor has been discharged and the estate distributed, the executor is therefore no longer subject to suit in his representative capacity. (*Union Savings Bank* v. *De Laveaga,* 150 Cal. 395, 398 [89 P. 84].) There would be no purpose in such a suit, for the executor has no assets of the estate under his control.

"Similarly, after an executor has been removed, his connection with the estate is severed and a judgment against him does not bind the estate. (*More* v. *More,* 127 Cal. 460, 462 [59 P. 823].)"

Inasmuch as we have concluded that respondent in its representative capacity is no longer subject to suit, we deem it unnecessary to consider any other points.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1963.