[Civ. No. 29427. First Dist., Div. One. Aug. 23, 1971.]

PATRICIA M. TOLEDO, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
LONNIT SEMIEAN, Real Party in Interest.

**COUNSEL**

Nagle, Vale, McDowall & Cotter and Vernon V. Vale for Petitioner.

No appearance for Respondent.

White, Cruikshank & White and John T. Cruikshank, Jr., for Real Party in Interest.

**OPINION**

**SIMS, J.**—Petitioner seeks a peremptory writ of mandate directing the respondent court to issue an order quashing services of summons upon her as administratrix of the estate of a deceased alleged tortfeasor. The real party in interest, who seeks to recover damages for injuries allegedly suf-

fered as a proximate result of the negligence of the decedent has filed a return to an alternative writ of mandate issued by this court.

Petitioner contends that no notice of the pendency of the action in which the summons was issued and ultimately served on her was filed in the probate proceedings, as required by section 714 of the Probate Code,[1] and that she was discharged as administratrix prior to the service of summons on her in her administrative capacity.

The claimant contends that a motion to quash the service of summons under section 418.10 of the Code of Civil Procedure[2] is not the proper manner to attack the alleged defective service, that petitioner had actual notice of the pendency of the action in which she was served and is estopped to deny the validity of the service, and that in any event the petitioner is in no way prejudiced in being required to defend on behalf of the estate because an insurance company is the real defendant in interest.

An examination of the respective contentions of the parties indicates that the court erred in denying the petitioner's motion to quash the service of summons on her in a capacity which had officially terminated. The peremptory writ must issue.

---

[1]Probate Code section 714 provides in pertinent part: "When a claim is rejected either by the executor or administrator . . . written notice of such rejection shall be given by the executor or administrator to the holder of the claim or to the person filing or presenting it, and the holder must bring suit in the proper court against the executor or administrator, within three months after the date of service of such notice . . .; otherwise the claim shall be forever barred. *Within 10 days after the filing of such complaint the plaintiff shall file or cause to be filed in the estate proceedings, in the office of the clerk of the court in which the estate proceedings are pending, a notice of pendency of such action. If such notice is not filed within said period, the executor or administrator shall incur no liability whatsoever by reason of any distribution of the estate.* Personal service of a copy of the summons and complaint upon the executor or administrator within said period is equivalent to the filing of such notice. . . ." (Italics added.)

[2]Code of Civil Procedure section 418.10 effective July 1, 1970 (before the order entered in these proceedings) provides in pertinent part: "(a) A defendant, on or before the last day of his time to plead or within such further time as the court may for good cause allow, may serve and file a notice of motion either or both: (1) To quash service of summons on the ground of lack of jurisdiction of the court over him. (2) To stay or dismiss the action on the ground of inconvenient forum. . . . (c) If such motion is denied by the trial court, the defendant, within 10 days after service upon him of a written notice of entry of an order of the court denying his motion, or within such further time not exceeding 20 days as the trial court may for good cause allow, and before pleading, may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons or staying or dismissing the action. . . ."

Similar provisions were contained in former sections 416.1 and 416.3 of the Code of Civil Procedure.

## I

On May 15, 1967, according to the claimant, he was involved in an automobile collision with a vehicle operated by Clarence Irvin Uplinger. Uplinger died and proceedings, in which petitioner was appointed his administratrix, were taken for the administration of his estate. On September 25, 1967, claimant filed in the estate proceeding his claim dated September 20, 1967 for $250,000 damages resulting from the accident. Thereafter, on November 14, 1967, he filed the complaint in the pending action against petitioner as "Administratrix of the Estate of Clarence Irvin Uplinger, deceased." It was alleged that more than 10 days had expired since the filing of the claim, and that the administratrix had failed to file her allowance or rejection of the claim. It is acknowledged that no notice of the pendency of this action was filed in the estate proceedings, as prescribed by section 714 of the Probate Code. Thereafter, the claimant communicated with the decedent's insurer and the attorney for the estate in the manner reviewed below.

On February 20, 1968, the administratrix filed a rejection of the claim filed September 25, 1967, and a notice of rejection of that claim. Copies of the rejection and notice were served upon the attorneys for the claimant as designed in the claim. They have represented him throughout. On November 19, 1968, proceedings were brought in the name of the petitioner[3] to perpetuate testimony, and the proceedings were assigned a new file number.

On July 8, 1969, petitioner executed her declaration for final discharge, and on July 11, 1969, an order was signed and filed discharging her and her sureties as administratrix of the estate of the decedent.

On May 18, 1970, the petitioner was served with a summons issued in the principal action on November 17, 1967. The summons advised the petitioner that she was served in each of the following capacities: "On behalf of *The Estate of Clarence Irvin Uplinger* as a person upon whom the summons and a copy of the complaint must be served to effect service against said party under the provisions of Code of Civil Procedure Section: . . ." and "As (or on behalf of) the person sued under the fictitious name of *Patricia M. Toledo, Administratrix of the Estate of Clarence Irvin Uplinger.*" (Italics denote printing inserted in blanks.) No check was made in the box denoting, "You are also served as an individual." The proof of service indicates, contrary to the face of the summons, that petitioner was

---

[3]The declaration of plaintiff's attorney does not reveal whether these proceedings were instituted by the petitioner in her representative or individual capacity, but it is assumed that it was the former. On February 18, 1969, an order was secured authorizing the perpetuation of the claimant's testimony, and his deposition was taken January 15, 1970.

given notice that she was served individually as well as in her representative capacity. It reads: "(DUAL CAPACITY) The notice also indicated that the person upon whom the service was made was served as an individual as well as on behalf of the [corporation], or [partnership] or other [unincorporated association], *The Estate of Clarence Irvin Uplinger* as required by Section 410 of said Code" and "(FICTITIOUS NAME) A notice of identity endorsed on the face of the copy of such summons as required by Section 474 of the Code of Civil Procedure."

Petitioner interposed her motion to quash summons, and it was heard on July 15, 1970 and submitted. A written order denying the motion was signed and filed the following day. On February 1, 1970, the claimant prepared and served a notice of entry of order denying motion to quash summons, and these proceedings ensued.

■ Each party acknowledges the verity of the following statement: "An estate is neither a person, natural or artificial, nor a legal entity, and cannot sue or be sued. It is merely a name to indicate the sum total of the assets and liabilities of the decedent, and the only way in which an action can be brought against an estate is to sue the executor or administrator in his representative capacity. Hence, an action against an estate and against others should be dismissed as to the estate." (21 Cal.Jur.2d, Executors and Administrators, § 989, p. 400.)

■ "It has long been established that when an estate has been distributed and the executor or administrator discharged, he is no longer subject to suit in his representative capacity for he no longer has under his control any assets of the estate; this is the rule even though the action be filed prior to his discharge." (*Katleman* v. *First Nat. Bank of Nevada* (1963) 212 Cal.App.2d 520, 524 [28 Cal.Rptr. 135]. See also *Johnston* v. *Long* (1947) 30 Cal.2d 54, 65 [181 P.2d 645]; *Union Savings Bank* v. *De Laveaga* (1907) 150 Cal. 395, 398 [89 P. 84]; *Childs* v. *De Laveaga* (1907) 150 Cal. 281, 285 [89 P. 82]; and *More* v. *More* (1900) 127 Cal. 460, 462 [59 P. 823].)

■ The trial court's order implies that the petitioner's suggestion that the court has no jurisdiction over her in her representative capacity was a matter that should be raised by her answer and determined on its merits. The claimant adopts this approach and asserts that petitioner should have advanced her attack as a plea in abatement. (See Code Civ. Proc., §§ 437 and 597.) It is clear from the facts that petitioner was served solely in her representative capacity, and that there was no attempt to hold her personally because of some default in the performance of her duties as a representative of the estate. Since she was not a representative it was proper to quash the service of summons on her in that capacity. The review by this

interlocutory appellate remedy was proper. (See Code Civ. Proc., § 418.10, subd. (c), fn. 2 above; and *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 256 [74 Cal.Rptr. 389, 449 P.2d 453].)

## II

One of claimant's attorneys filed a declaration in opposition to the motion to quash in the trial court. He alleged that prior to the filing of the action, and as well, thereafter, claimant's attorneys conducted negotiations with the representatives of the insurer of the decedent. It appears that as early as June 14, 1967, the insurer's claim representative was having difficulty in contacting the claimant's attorney. The declarant stated that he advised the insured's representative that a claim was filed against the estate the following September, and that he and an associate discussed the claim with a claims representative of the insured on many occasions. A letter from the claims representative dated March 5, 1969, almost 18 months after the claim was filed indicated that the insurer was still attempting to secure medical bills and medical reports, and the amount of the claimant's demand for settlement.

He alleges as a conclusion, "That throughout this whole matter, said insurance company, its representatives and attorneys were well aware of" the action which had been filed November 14, 1967. He alleges that he made inquiries of the attorney for the estate, of the claims representative of the insurer, of the attorney for the insurance company, of the voter registration office of Santa Clara County, of the State Department of Motor Vehicles, and searched Santa Clara County telephone books without success in seeking to locate the address of petitioner. He fails to allege that he filed the notice required by section 714 of the Probate Code, or that he actually disclosed to petitioner or the attorney for the estate that a suit had been filed. The use of the new proceedings to perpetuate the claimant's testimony (see fn. 3 above, and accompanying text) may suggest either a fancied procedural advantage by the attorney for the insurer, or his ignorance of the fact that an action was pending.

In *Estate of Wilcox* (1945) 68 Cal.App.2d 780 [158 P.2d 32], claimant failed to file the notice required by section 714 within 10 days after filing an action on his claim. He did, however, serve the representative of the estate with a copy of the summons and complaint within 17 days after he filed his action and before the representative had been discharged. The court stated, "The apparent purpose of . . . section 714 of the Probate Code was to provide protection to an executor or administrator in the final distribution of the estate against liability on a rejected claim on which suit had been filed but summons and complaint had not been served and about

which he had no knowledge. Before this amendment it was possible for an executor or administrator to close an estate in good faith believing that all claims had been disposed of and later find proceedings to set aside the orders settling his accounts and distributing the estate initiated by the holder of a rejected claim on which suit had been filed in time but in which summons and complaint had not been served. Such an executor or administrator might even be faced with an action to hold him personally liable for the amount of the claim. [Citation.] To protect fully against these hazards required a search of the pending actions in the local courts or contacting the holders of all rejected claims. This placed an undue burden on the representative of an estate. There is much more reason for placing upon the holder of a rejected claim the responsibility of furnishing the information that an action has been filed thereon. That in effect is what the amendment to section 714, Probate Code, sought to accomplish. The important thing is that the executor or administrator should have notice or knowledge of the pendency of the action on the rejected claim before he files his final account and has the estate finally distributed. That purpose was accomplished in this case because summons and complaint were served on the executor seventeen days after the action was filed. He filed his answer approximately two weeks thereafter and more than a month and a half prior to filing his final report and account and petition for distribution. The amendment therefore should not operate to bar appellant's claim since the purpose of the amendment, namely, to give notice to the executor of the pendency of the action on the rejected claim had been accomplished. As thus construed the amendment is in harmony with sections 953 and 956 of the Probate Code which contemplate that the claims against an estate shall either be paid or provision made therefor before final settlement and distribution of the estate.

"If the Legislature had intended that the amendment should operate as a statute of limitations and that the failure of the claimant to file in the probate proceedings notice of the pendency of action on said claim within ten days after filing the complaint (or to serve the summons and complaint within said period) should bar further liability thereon it would have been easy to so state. . . .

"The words 'shall file' in the amendment are not necessarily mandatory. [Citation.]" (*Estate of Wilcox* (1945) *supra,* 68 Cal.App.2d at pp. 784-785.)

In this case the administratrix had been discharged. The principal action is not an action to hold petitioner personally liable for failure to pay a claim which she knew was the subject of a pending lawsuit against the estate at the time she was discharged. It is immaterial whether the section is a statute of limitations or not, or whether the representative before securing her dis-

charge had some informal notice of the pending action. The fact remains that at the time petitioner was served she was no longer the representative of the estate of the alleged tortfeasor. She had no authority to receive summons on behalf of the estate, and has no authority to file an answer on its behalf. Until her discharge is set aside, or until a successor is appointed, there is no one to be served or to appear on behalf of the estate.[4]

In some instances jurisdiction acquired by a court through the service of summons relates back to the date of the filing of the complaint. (See *DeBrincat* v. *Swart* (1934) 1 Cal.App.2d 756 [36 P.2d 247], and *DeBrincat* v. *Mogan* (1934) 1 Cal.App.2d 7, 10 [36 P.2d 245].) That principle presupposes that there has been a valid service of summons. Service on petitioner, whose agency for the estate of the decedent was long since terminated, was not valid service which would bind anyone. Jurisdiction over an estate for which there is no representative, cannot be conferred by estoppel in these circumstances.

## III

The fact that there is an insurance company which will indemnify the estate does not render the petitioner subject to suit or service of summons after she is discharged. In the first place the mere interest of the decedent's insurance company does not establish that there was effective insurance in force, or that the insurance company will defend.[5] Nor does it appear that the insurance, if any, was sufficient to cover the claimant's claim of $250,-000. The petitioner, discharged as administratrix, could not bind the estate of the deceased insured for liability for any excess which could be enforced against any property of the decedent which might subsequently be discovered.

No opinion is expressed as to whether at this late date the claimant may reopen the estate for the purpose of prosecuting his claim and action; or, as to whether, under the circumstances, any representative appointed for the estate would be barred from asserting defenses otherwise available, at

---

[4]The claimant concedes that failure to comply with the provisions of section 714 or to serve petitioner as administratrix prior to her discharge may have relieved the petitioner from any liability from distributing the assets of the estate while the unnoticed suit on the claim was pending; that he as claimant would be barred from pursuing the distributed assets in the hands of the distributees of the estate; and that he could not secure an order setting aside that distribution. He insists, however, that the filing of his suit, and informal notice thereof, in some way nullifies the discharge of petitioner.

[5]It does appear, however, that petitioner is not presently represented by the attorneys who secured her discharge as administratrix and apparently represented her in the estate. From the declaration of claimant's counsel it may be inferred that petitioner's present counsel are counsel who represent the decedent's insurer.

least to the extent of the insurance coverage, because of the alleged acts or omissions of the insurer's representatives. In any event, it is clear that petitioner, in the representative capacity in which she was served, is not a proper party to the action, and that the court erred in refusing to quash the service upon her.

Let a peremptory writ of mandate issue ordering the trial court to vacate its order of July 16, 1970, and to grant the petitioner's motion to quash the service on May 18, 1970, of summons on her in her alleged representative capacity.

Molinari, P. J., and Elkington, J., concurred.